**In re Gary Lamoyne BROWN, Debtor.**

**UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, Plaintiff,**

v.

**Gary Lamoyne BROWN, Defendant.**

Bankruptcy No. 584–00018–S.
Adv. No. 584–0084.

United States Bankruptcy Court,
W.D. Louisiana,
Shreveport Division.

Jan. 8, 1986.

Chatham H. Reed, Simon, Fitzgerald, Cooke, Reed & Welch, Shreveport, La., for debtor-defendant.

Joseph S. Cage, Jr., U.S. Atty., Leven H. Harris, Asst. U.S. Atty., for Department of Health & Human Services, plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LeROY SMALLENBERGER, Bankruptcy Judge.

On January 5, 1984, Dr. Brown filed for relief under Chapter 7 of the Bankruptcy Code. This adversary proceeding was filed by the Department of Health and Human Services to determine the dischargeability of a debt under the provisions of 11 U.S.C. 523(a)(8) which renders nondischargeable any government guaranteed or insured educational loan. The record indicates that during the period of June 30, 1975, to May 31, 1977, debtor received a scholarship from HHS under the Public Health and National Health Service Corps (PH/NHSC) Scholarship Training Program to attend medical school. Section 225 of the Public Health Service Act (42 U.S.C. §§ 234), as in effect on September 20, 1977. In return for this scholarship, debtor agreed, upon the completion of his medical training, to serve as a member of the National Health Service Corps in a critical health manpower shortage area for three years. Under the terms of the scholarship agreement, if he failed to complete his service obligation, he would be liable for the repayment of the amounts received under the scholarship award, plus interest at the maximum legal prevailing rate in accordance with 42 U.S.C. § 234(f)(1) and 42 CFR 62.8(a), as adopted on May 22, 1974.

During the period of September 30, 1978, to June 30, 1979, debtor received a scholarship from HHS under the National Health Service Corps (NHSC) Scholarship Program to attend medical school. Section 751 et seq. of the Public Health Service (PHS) Act (42 U.S.C. § 294t *et seq.*); (42 U.S.C. § 294t *et seq.*); redesignated section 338A et seq. of the PHS Act (42 U.S.C. § 254*l et seq.*) by section 2709(a) of Pub.L. 97–35, effective August 13, 1981. In return for this scholarship, debtor agreed, upon the completion of his medical training, to serve as a member of the National Health Service Corps in a designated health manpower shortage area for a period of one year. Under the terms of his contract, if he failed to begin or complete his service obligation, he would be liable for the payment of damages to the United States in an amount calculated in accordance with section 754(c) of the Public Health Service Act, 42 U.S.C. § 294w(c); redesignated section 338D(b)(1), 42 U.S.C. § 254*o*(b)(1).

Debtor graduated from the Louisiana State University School of Medicine in June 1979. He requested and received a deferment of his service obligation in order to complete a family practice residency. When debtor failed to complete his residency and indicated that he did not intend to perform his service obligation, he was placed in breach of the conditions of both scholarship awards, effective August 1, 1981.

Thus, the debtor is obligated to plaintiff in the sum of $70,465.56 ($42,914 in principal, plus interest of $27,551.56 to petition date). The government argues that the debt incurred under the PH/NHSC Scholarship Training Program should be nondischargeable pursuant to 11 U.S.C. § 523(a)(8) and the debt incurred under the NHSC Scholarship Program to be nondischargeable pursuant to 42 U.S.C. § 254*o* (c)(3) (effective August 13, 1981).

The issue in this case is whether the Scholarship Program that the debtor participated in is within the definition of "educational loan" as provided by section 523(a)(8) of the Bankruptcy Code, which provides:

§ 523. **Exceptions to discharge.**

(a) A discharge under 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment pe-

riod) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

The government correctly observes that the program in question did not technically give loans. Rather, this was a federal scholarship program. Under the PH/NHSC Program Dr. Brown received tuition, fees and an amount to cover the reasonable cost of books, supplies, equipment and other necessary expenses. In return, debtor contractually agreed to serve as a member of the National Health Service Corps for three (3) years. Additionally, the debtor participated in his senior year in the NHSC program and received expenses, tuition and a monthly support stipend. Additionally, the debtor contractually agreed to serve an additional one year in the National Health Service Corps.

The Bankruptcy Code does not define educational loan. In *In re: Mary Lee Shipman,* 33 B.R. 80 (W.D.Mo.1983) Chief Judge Barker, after an analysis of the legislative history of section 523(a)(8), concluded that the primary determination is whether the funds used were directly for educational purposes, not whether the funds constituted a loan. The Court believes that Chief Judge Barker was correct and will follow his rationale. In *Shipman,* the monthly advances were part of a state Work-Study Program, the record indicated that none of those sums went directly to the education of the debtor. Rather, those funds were paid as a salary in return for the service obligation of one day of work for each day paid.

■ In contrast, in the case at bar, although designated a scholarship, a majority of the funds advanced under the program were used for educational purposes. The record indicates that the debtor received $3,615.00 for tuition and fees from 7/29/75 to 1/18/79 and second, $25,853.00 in monthly stipend payments from 6/30/75 to 6/30/79. Thus, the $3,615.00 was clearly for educational purposes and should be de-

clared nondischargeable under 523(a)(8). The debtor argues that because the program was designated a "scholarship" it should be discharged in bankruptcy regardless of its educational purpose. The Court disagrees. The sums advanced were to be considered a scholarship *only* if the debtor fulfilled the conditions of the scholarship award. The scholarship contract provides:

(a) A scholarship recipient is obligated to serve on active duty for one year as a Commissioned Officer in the Public Health Service or as a civilian member of the National Health Service Corps following completion of academic training, for each academic year of support or fraction thereof received under this program: **Provided however,** that in no event shall a recipient serve less than two years.

(b) At least one-half the total period of service required by paragraph (a) to be performed by such recipient shall be spent providing health care and services: (1) In an area designated under Section 329(b) of Public Health Service Act, as a critical health manpower shortage area; (2) as a member of the Indian Health Service or Bureau of Medical Services and in an area determined by the Secretary (under Section 329 of the Act or otherwise) to have a health manpower shortage; or (3) in connection with any program designated by the Secretary, for the provision of health care and services in such an area.

(c) For recipients receiving a degree from a school of medicine or osteopathy, the commencement of a period of obligated service may be deferred to a period of time not to exceed one year for internship (or equivalent training) and for good cause shown, at the option of the Secretary for an additional period of time for residency training. Such period of internship and residency shall not be creditable in satisfying an active duty service obligation, unless such internship and residency is served in a facility of the

Public Health Service, or other facility of the National Health Service Corps.

2. In accordance with Section 225(f) and the implementing regulations:

(a) If for any reason a participant fails to complete an active duty service obligation, such participant shall be liable for the payment of an amount equal to the scholarship payments, tuition and other educational fees paid, plus interest at the maximum legal prevailing rate running from the date such payments were made. Any amount which the United States is entitled to recover under this paragraph, shall within the three year period beginning on the date on which it is determined that a breach occurred, be paid to the United States. For the purpose of this paragraph, maximum legal prevailing rate of interest shall mean the maximum permissible rate applicable to this type of debt prescribed by the District of Columbia Code on the day of breach.

(b) When a person undergoing training in the program terminates academic training, he shall be liable for repayment to the United States for an amount equal to the cost of tuition and other educational expenses paid to or for such person from Federal funds plus any scholarship payments received by such person under the program. Repayment of such amount shall be within three years of the date of termination.

(c) Where an individual has failed to complete an active duty obligation, or failed to complete academic training, the Secretary may upon proper application, waive or suspend the obligation incurred whenever compliance by such individual is impossible or would involve extreme hardship to such individual and if enforcement of such obligation with respect to such individual would be against equity and good conscience.

Thus, upon failure to complete active duty, the funds had to be paid back—in effect the monies advanced were a "loan".

 The $25,853.00 stipend award presents a different problem under the *Shipman* rationale. This case was taken under advisement without affording the government the opportunity of showing what part of the stipend was used directly for educational purposes, i.e., books, supplies and equipment and what part was used for noneducational purposes, such as rent and living expenses. Accordingly, the government should be given that opportunity. Perhaps the parties can agree on a breakdown; at this stage, however, the record is incomplete on this issue and this Court can not determine what is dischargeable of the $25,853.00 under section 523(a)(8). Therefore, a final judgment will not be answered until the additional evidence is presented or the parties can stipulate to an amount.