**CAMPANIELLO IMPORTS, LTD.;**
**Campaniello Imports of Florida**
**Inc., Plaintiffs–Appellants,**

v.

**SAPORITI ITALIA S.p.A.; Sergio Saporiti;**
**Raffaele Saporiti; Gidatex S.R.L.; Dario Filippini, Defendants–Appellees.**

No. 1221, Docket 96–9113.

United States Court of Appeals,
Second Circuit.

Argued April 2, 1997.

Decided June 26, 1997.

Nathan Lewin, Miller, Cassidy, Larroca & Lewin, Washington, DC (Timothy J. Preso, Miller, Cassidy, Larroca & Lewin, Washington, DC, of counsel, and on the brief), for Plaintiffs–Appellants.

Thomas G. Bailey, Jr., Whitman, Breed, Abbot & Morgan, New York City (Patricia Anne Kuhn, John C. Canoni, Whitman, Breed, Abbott & Morgan, New York City, of counsel, and on the brief), for Defendants–Appellees.

Before: OAKES and KEARSE, Circuit Judges, and POLLACK, District Judge.*

MILTON POLLACK, Senior District Judge:

On May 22, 1974 appellee Saporiti Italia S.p.A. ("Saporiti Italia"), an Italian furniture manufacturer, entered into a contract with Thomas Campaniello of New York, granting him an exclusive distributorship in the United States, Canada, Mexico and Puerto Rico for Saporiti Italia furniture. On·May 29, 1974, Campaniello organized Campaniello Imports, Ltd., to facilitate the execution of the agreement and to secure a lease for a showroom. Campaniello Imports opened its first sales facility in New York City and commenced importing Saporiti Italia's products for resale to interior designers and architects. Subsequently, Saporiti Italia granted Campaniello additional exclusive territories in the Caribbean and South America.

---

The exclusive distributorship was later extended when Campaniello opened a Florida showroom and Campaniello organized under his ownership Campaniello Imports of Florida Inc. (together with Campaniello Imports, Ltd., the appellants "Campaniello companies") to provide service to the new sales territories. The Campaniello companies later opened additional showrooms in Florida, Texas and California.

During the next several years, appellants purchased substantial amounts of Saporiti Italia's products and resold them to interior designers and architects through their showrooms.

During the period of that distributorship until 1993, Saporiti Italia was owned and controlled by two brothers—appellee Sergio Saporiti ("Sergio") owned 60% of the company and Georgio Saporiti owned 40%. On or about September 23, 1993, Georgio Saporiti withdrew as an officer and employee of Saporiti Italia, and on January 11, 1994, he sold his 40% interest in the company to appellee Raffaele Saporiti ("Raffaele"), Sergio Saporiti's son. Sergio and Raffaele are Italian citizens and reside in Italy. After September 23, 1993, they jointly controlled and managed the business, that is, until April, 1994.

Business conditions for Saporiti Italia deteriorated in the 1990s. Sales of the Saporiti Italia products declined; important Saporiti Italia clients in Italy and abroad went bankrupt. On January 11, 1994, Saporiti Italia went into liquidation.

In March, 1994, the Campaniello companies filed an action in the District Court for the Southern District of New York against Saporiti Italia and its principals, Sergio and Raffaele, alleging breach of contract and fraud ("1994 Litigation"). The appellants charged that the appellees had violated the terms of their agreements by selling directly to purchasers in appellants' territory models of Saporiti Italia products; that appellees had made direct sales of Saporiti Italia products to customers whose orders were taken at appellees' factory in Milano, Italy without acknowledging the sales to appellants, thereby depriving appellants of commissions of more than one and a half million dollars; that stipulated commissions payable to Campaniello on sales in Mexico and Venezuela had not been paid; that fabrics delivered to Saporiti Italia on orders had not been utilized or returned; and that merchandise sold to appellants were not, as required to be sold, at prices equal to or lower than prices charged to local distributors in Italy. Appellants demanded a monetary judgment, an accounting and punitive damages.

On April 20, 1994, Saporiti Italia applied to the Tribunal of Busto Arsizio ("Tribunal") for protection under the Italian law known as "Concordato Preventivo," which contains provisions that permit restructuring of debts in a fashion similar to Chapter 11 of the United States bankruptcy laws. On April 22, 1994, the Tribunal admitted Saporiti Italia to the procedure of Concordato Preventivo. On May 8, 1994 the judge assigned to the Concordato Preventivo authorized Saporiti Italia to lease their company for ten months to Gidatex S.R.L. ("Gidatex"), a local furniture manufacturer, which was owned and controlled by Dario Filippini, an Italian citizen, with an option to purchase Saporiti Italia's business if Gidatex could keep Saporiti Italia afloat during the ten month period.

On May 18, 1994, Filippini made a telephone call from Italy to Campaniello in New York stating that he was the new owner and sole administrator of the Saporiti Italia business, that he wished to enter into a distributor relationship with the Campaniello companies, and that if those companies wished to consider a new relationship for the distribution of Saporiti Italia furniture and would withdraw their lawsuit in the District Court in New York he would offer them a favorable contract for the Saporiti Italia line. Campaniello responded by expressing interest in a new contract and an amicable resolution of the New York lawsuit. Filippini asked Campaniello to meet him in Italy for further discussions.

Accepting this invitation, Campaniello and his lawyers met with Filippini and his counsel in Busto Arsizio, in the province of Varese, Italy, on June 13, 1994. The Italian attorneys explained to Campaniello that the bankruptcy estate would seek to settle creditors' claims at 40% of their value and that

Filippini had offered to the supervising court that Gidatex would finance and take over Saporiti Italia for ten months, after which Gidatex could exercise an option to buy the business for approximately $6 million. Campaniello and his attorneys were told that if Gidatex failed to exercise the option, Saporiti Italia's liquidation would go forward. The Italian lawyers explained that the size of appellants' claims left insufficient funds available to pay 40% of the amounts owed to other creditors. Consequently, under Italian law, Saporiti Italia would have to be liquidated.

They explained that if the Campaniello companies withdrew their claims against the Saporiti Italia estate and entered into a separate agreement with Gidatex, any debt of Saporiti Italia to those companies could be excluded from the Concordato Preventivo and a reorganization with the other creditors could be accomplished within the 40% composition. At this same meeting, Filippini stated that if such an agreement could be reached, he, as sole administrator of the business, would cooperate with Campaniello to resolve past problems. Filippini further stated that, because his offer to the Italian court was for a ten-month period, he could commit to a distributorship agreement with the Campaniello companies only up to March 31, 1995, but that he planned to extend the agreement.[1]

The parties met again the next morning and afternoon, this time joined by other persons including Sergio and Raffaele. Filippini restated that he would function as sole administrator of Saporiti Italia and would provide sufficient funds to allow Saporiti Italia to resume business during its reorganization. He stated that he was willing to enter into a financial settlement with the Campaniello companies, and that within a month of the consummation of such a settlement he would undertake to clear up the various complaints that had been made in the past.

As a result of these extensive meetings, on June 14, 1994, Gidatex and the Campaniello companies entered into a nine-month exclusive distributorship ("Gidatex Agreement"), which replaced the previous distributorship contract between the Campaniello companies and Saporiti Italia. As part of the agreement, Campaniello agreed to withdraw the 1994 Litigation against Saporiti Italia and Sergio and Raffaele. Gidatex engaged the Campaniello companies as the exclusive distributor of Saporiti Italia furniture in the United States and other Western Hemisphere countries through March 31, 1995. The agreement stipulated that the contract would automatically extend an additional five years if Gidatex exercised its option to purchase Saporiti Italia and imposed minimum purchase requirements on the Campaniello companies. The Campaniello companies also accepted an Italian choice-of-law provision.

Three weeks later, on July 7, 1994, appellants entered into a separate agreement with Saporiti Italia, Raffaele and Sergio, under which the latter would write off approximately Lit. 250 million (about $160,000) in receivables due Saporiti Italia from the Campaniello companies and the former would withdraw their 1994 Litigation and waive all claims against the Saporiti parties ("Settlement Agreement"). This agreement was approved by the Tribunal. In addition, upon further negotiation, the Campaniello companies agreed to amend the Gidatex Agreement.

The amendments to the Gidatex Agreement concerned four distinct provisions. The first amendment extended the exclusive sales territory to include Nicaragua and El Salvador. The second amendment provided that, for purposes of determining Campaniello's obligatory minimum purchases, the parties would include orders by appellants regardless of whether Gidatex fulfilled them. More importantly, the third amendment included an arbitration-in-Italy clause that stated "[a]ny controversy between the two parties regarding the above agreement will be resolved by arbitration." The fourth amendment granted the Campaniello companies an additional discount of ten percent on finalized orders, and set out the terms for receipt of the additional discount. Campaniello, in a letter to his Italian counsel on July 6, 1994, noted his receipt of the proposed

---

1. Gidatex exercised its option on July 5, 1995 to acquire Saporiti Italia and the Tribunal of Busto Arsizio subsequently approved the Concordato Preventivo making the transaction official.

amendments and directed him to make changes to the proposed amendment concerning the additional discount.

Although the Tribunal approved the Settlement Agreement on July 7, 1994, appellants did not file a stipulation of discontinuance in the Southern District Court of New York until August 18, 1994. Appellants' delayed filing the stipulation of discontinuance because they sought to ensure that the Settlement and Gidatex Agreements protected their rights. In a July 25, 1994 letter to Saporiti Italia's New York counsel, Campaniello's New York counsel wrote:

I acknowledge receipt of your letter of July 22, 1994. I am sorry that the withdrawal of the action has been delayed beyond your expectations. Considering the total disrespect your clients exhibited for the written contract, I deem it in my client's best interest to make sure that the settlement in Italy was fully in place before I considered executing any documents terminating the American action.

Appellants' stipulation for dismissal expressly provided that "[a]ll claims presented by the complaint ... shall be dismissed with prejudice as to all parties."

Gidatex then started a campaign of publicity addressed to architects and designers, developed a project for creation of new products with the collaboration of architects of international reputation, and rented a prestigious space in the center of Milano to be used for exhibition of "Saporiti Italia products."

There is no evidentiary information in the Record on Appeal to establish what business was transacted by or on behalf of Gidatex with the Campaniello companies during the next several months under the new distributorship contract. The business had been transferred to Gidatex and Saporiti Italia was in the hands of the Italian Court; its counterclaims against the Campaniello companies for accounts receivable had been written off in the settlement and no further business appears to have been conducted with Saporiti Italia by the Campaniello companies. Georgio and his sons and wife had formed a new company of their own which had become involved in the production of furniture and furnishings in general. Raffaele had become employed by Gidatex as a consultant with the new Gidatex organization. The complaints voiced in this lawsuit provide the only clue as to the course of events concerning the sale and distribution of furniture and the activity of Gidatex and Campaniello under the distributorship.

Sometime after the Gidatex arrangement with Campaniello got underway, the new distribution agreement proved not to be working. As was subsequently alleged by the appellants in an amended complaint, the appellees did not fulfill appellants' back orders promptly and shipped merchandise with unauthorized and unacceptable modifications and quality; curtailed two-thirds of its line without providing replacements; offered customers inferior quality; discontinued advertising of the Saporiti Italia line in appellants' territory; incorrectly billed accounts; and solicited direct sales to customers in appellants' exclusive territory.

In any event it had become apparent to the parties during meetings in Italy that the new distribution relationship with Campaniello was nearing its end. On April 10, 1995, Campaniello met with Filippini in Italy, at which time the latter announced that the appellants had failed to satisfy their obligatory minimum purchase requirement with Gidatex and that he was terminating the exclusive distributorship.

On September 5, 1995, appellants filed the present action in the District Court. The Campaniello companies alleged that the appellees had acted pursuant to a fraudulent scheme to induce Campaniello to withdraw the original federal action against the Saporitis and to enter into a new short-term distribution agreement with Gidatex including obligatory minimum purchase requirements and an arbitration-in-Italy clause. The 1995 complaint alleged further that Filippini misrepresented that his company Gidatex would supply sufficient capital to enable full production of "Saporiti" furniture, and that by their misrepresentations the appellees schemed to obtain for themselves the goodwill and value created for the Saporiti product line by the

Campaniello companies' efforts over a span of 20 years.

The relief which the appellants sought in this 1995 lawsuit was (1) rescission of the 1994 Settlement Agreement with the Saporitis and the distributorship negotiated with Gidatex based on assertions of fraud and misrepresentation in the inducement, (2) damages to the goodwill of the Campaniello companies and losses of sales and profits as a result of alleged fraud and misrepresentation, (3) an accounting for direct sales made in violation of the Gidatex Agreement, (4) a recovery for appellees' unjust enrichment based on appellees' capture of appellants' goodwill, and (5) an injunction against any direct sales by appellees within appellants' territory.

Appellees responded with motions to dismiss the initial and the amended complaints. The District Court granted the dismissal of all claims on August 2, 1996 on the grounds that (1) the Court lacked personal jurisdiction over the named individual appellees Filippini, Sergio and Raffaele, (2) the complaint failed to state a cognizable claim of fraud and failed to plead fraud with the requisite particularity, and (3) the claims against Gidatex were by express agreement with appellants subject to mandatory arbitration in Italy pursuant to 9 U.S.C. § 3.

### Discussion

I. *Res judicata and the independent action in equity*

■ Appellees initially argue that, based on the stipulation and Order of discontinuance of the 1994 Litigation, the claims in the present action pre-dating August 18, 1994, the date when the earlier suit was dismissed with prejudice, are barred by the doctrine of res judicata. "[A] discontinuance with prejudice is deemed a final adjudication on the merits for *res judicata* purposes on the claims asserted or which could have been asserted in the suit." *NBN Broadcasting, Inc. v. Sheridan Broadcasting Networks, Inc.,* 105 F.3d 72, 78 (2d Cir.1997).

■ Res judicata "does not preclude a litigant from making a direct attack ... upon the judgment before the court which ren-

dered it." *Weldon v. United States,* 70 F.3d 1, 5 (2d Cir.1995) (quoting *Watts v. Pinckney,* 752 F.2d 406, 410 (9th Cir.1985)). Rule 60(b)'s "savings clause" allows "a court to entertain an independent action to relieve a party from a judgment, order, or proceeding ... or to set aside a judgment for fraud upon the court." Fed.R.Civ.P. 60(b). As allowed by this provision, appellants have brought a direct attack seeking rescission of the stipulation of discontinuance based on allegations that appellees committed fraud in inducing the Settlement Agreement.

■ Appellants do not base their claim for rescission of the settlement on fraud upon the court. Instead, they concentrate on the "provision—independent of the provision addressing 'fraud upon the court'—authoriz[ing] an independent action for fraud perpetrated *upon a party* to prior litigation in which a judgment has been entered." This provision allows independent actions for relief from a judgment based on fraud on a party "insofar as established doctrine permits." Fed.R.Civ.P. 60(b) advisory committee notes.

■ The court exercises discretion in determining whether to entertain independent actions for relief and looks to traditional equitable principles to guide its decision. *See Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 71 (2d Cir.1990); *see also Robinson v. Volkswagenwerk AG,* 56 F.3d 1268, 1274 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 705, 133 L.Ed.2d 661 (1996); *Winfield Assoc., Inc. v. W.L. Stonecipher,* 429 F.2d 1087, 1090 (10th Cir.1970) (stating that "[t]he granting of relief in this unusual type of proceeding lies largely within the discretion of the trial judge"). Moreover, "[a]n appellate court should not disturb the equitable determination of the trial judge unless it can conclude that the trial judge abused his discretion." *Winfield Assoc., Inc. v. W.L. Stonecipher,* 429 F.2d at 1090–91. The trial court below affirmatively denied appellants' independent action for equitable relief. *Campaniello Imports, Ltd. v. Saporiti Italia,* 95 Civ. 7685, 1996 WL 437907, at *7 n. 5 (S.D.N.Y. Aug. 2, 1996) (stating that "[s]ince plaintiffs' fraud claims are dismissed, ...

plaintiffs' attempt to assert an independent action fails").

■ Generally, claimants seeking equitable relief through independent actions must meet three requirements. Claimants must (1) show that they have no other available or adequate remedy; (2) demonstrate that movants' own fault, neglect, or carelessness did not create the situation for which they seek equitable relief; and (3) establish a recognized ground—such as fraud, accident, or mistake—for the equitable relief. *Cresswell v. Sullivan & Cromwell*, 922 F.2d at 71 (citing *Winfield Assoc., Inc. v. W.L. Stonecipher*, 429 F.2d at 1090).

In this case, appellants have or have had other available remedies at law. The record demonstrates that the Campaniello companies would have been satisfied with the Settlement Agreement had the Gidatex Agreement been performed as they believed it should have been but for the alleged breaches of contract denominated as fraud. Moreover, the Campaniello companies' purported losses suffered in reliance upon appellees' alleged misrepresentations could be cured by vindication of their rights under the Gidatex agreement. There is no reason that the Campaniello companies can not raise claims either of fraud or breach of contract against the appellees in Italy through the agreed arbitration. *Cf. Martina Theatre Corp. v. Schine Chain Theatres, Inc.*, 278 F.2d 798, 802 (2d Cir.1960) (denying equitable relief where plaintiff could have "vindicated whatever rights were violated by this misrepresentation in an action in tort for deceit"). In fact, claim two of the amended complaint raises such a claim seeking damages to appellants' goodwill and losses of sales and profits based on the Gidatex Agreement.

More importantly, the Campaniello companies have failed to show that their own carelessness did not create the situation for which they now seek equitable relief. Rule 60(b)(3) specifically allows a court to relieve a party from a final judgment for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party," as long as the motion is "made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." The stipulation dismissing the 1994 Litigation was entered on August 18, 1994; thus the appellants had until August 18, 1995 to bring a motion for relief under Rule 60(b)(3).

■ Filippini verbally terminated the Gidatex Agreement with appellants on April 10, 1995. Appellants also allege that appellees ceased all communications with appellants "on or about April 6, 1995," and suggest that appellees failed to comply with their contractual promises from the outset of the Gidatex Agreement. If appellants believed that appellees' conduct constituted a fraud, they must have come to this realization at the very latest by April 10, 1995 and possibly sooner. Since appellants premise their independent action for equitable relief on fraud, they had ample time to submit a Rule 60(b)(3) motion before the August 18, 1995 deadline. "[I]t is fundamental that equity will not grant relief if the complaining party 'has, or by exercising proper diligence would have had, an adequate remedy at law, or by proceedings in the original action ... to open, vacate, modify, or otherwise obtain relief against, the judgment.'" *Cresswell v. Sullivan & Cromwell*, 922 F.2d at 71 (citing *Winfield Assoc., Inc. v. W.L. Stonecipher*, 429 F.2d at 1090 (citation omitted)).[2] Having

---

**2.** A conflict of decision exists regarding independent actions for relief that could have been brought as motions under Rule 60(b)(1) through (3), had the motions been timely. *Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 47 (1st Cir.1995) (citing a "modicum of disagreement in the circuits" regarding such actions); *Restatement (Second) of Judgments* § 79 cmt. b. On the one hand, "time limitations established by the 60(b) type of provision imply a time bar that seemingly should not be subject to evasion by the simple expedient of characterizing the application for relief as an independent action instead of

a motion." *Restatement (Second) of Judgments* § 79 cmt. b; *see also Geo. P. Reintjes v. Riley Stoker Corp.*, 71 F.3d at 46–47 (asserting that "where the body of the Rule contains an explicit time limitation for motions invoking specified grounds for relief, it would make no sense to apply the final general provision, containing no limit of time, so broadly as to cover all the grounds for which the time limit is expressly stated"). On the other hand, several authorities have held that the time limitation applies to motions only and not to independent actions,

failed to take advantage of the adequate remedy at law offered by Rule 60(b)(3), appellants may not now seek relief in equity.

■ Moreover, appellants fail to raise a recognized ground for the extraordinary equitable relief of an independent action after the stipulated time for legal relief under Rule 60(b)(3)—namely one year—has gone by and a substituted distributorship has been negotiated and accepted. "[T]he type of fraud necessary to sustain an independent action attacking the finality of a judgment is narrower in scope than that which is sufficient for relief by timely motion." *Gleason v. Jandrucko*, 860 F.2d 556, 558 (2d Cir.1988); *see also Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d at 48 (stating that "fraud cognizable to maintain an untimely independent attack upon a valid and final judgement" requires more than common law fraud); *Restatement (Second) Judgments* § 70 cmt. c (stating that a critical consideration concerns "whether the claim of fraud is well substantiated and not merely asserted at large"). Appellants fail to meet the pleading requirements for even common law fraud, let alone the more stringent criteria for the type of fraud necessary to sustain an independent action under the "savings clause" in Rule 60(b).

Absent a viable direct attack on the stipulation of discontinuance of the 1994 Litigation, res judicata "precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). Thus, the District Court properly dismissed the claims in this action under res judicata to the extent that they involved issues that were or could have been raised in the 1994 Litigation. We next turn to the claims based on alleged fraudulent conduct subsequent to the commencement of the 1994 Litigation.

## II. *Fraud was not adequately pleaded*

■ The District Court dismissed appellants' fraud claims for failure to plead

and that the doctrines of laches and due diligence govern the latter. *Restatement (Second) of*

fraud with the particularity required by Fed. R.Civ.P. 9(b). Rule 9(b) is designed "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991). Consequently, Rule 9(b) requires that "the circumstances of fraud or mistake be pleaded with particularity," but also provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." In order to avoid abuse of the less stringent requirement for pleading scienter, however, plaintiffs are required to "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994); *see also Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir.1995). Appellants' allegations here fail to give rise to the requisite strong inference of fraudulent intent.

### A. *Gidatex and Filippini*

Appellants allege that Filippini, Raffaele's father-in-law, induced appellants into settling their 1994 Litigation and accepting the Gidatex Agreement in order to terminate the distributorship on fraudulent grounds and thereby supplant the Campaniello companies' distributorship with direct solicitations within appellants' exclusive territories. Three items can be identified which could be said to sustain an inference of such a fraudulent intent—the performance of at least one sale in the Campaniello companies' exclusive sales area, the thwarting of the Campaniello companies' attempts to conduct business in New York and the creation of a shell corporation with minimal capital. We address each of these assertions.

Preliminarily, we attribute little significance to the fact that Filippini is Raffaele's father-in-law considering that appellants never disclaimed prior knowledge of this fact; it was never alleged to be an omission withheld from appellants.

*Judgments* § 79 cmt. b.

Appellants allege that "[o]n or about April 11, 1995, Simon Vainstein, an architect from Caracas, Venezuela, (one of plaintiffs' exclusive territories), visited the defendants' display at the Super Studio in Milan show where defendants solicited and secured an order for about LIT 140,000,000." Am. Compl. ¶ 103(f). This fact allegedly supports appellants' claim that the appellees wanted to cut the Campaniello companies out of the North/South America market for their furniture. The relevance of this sale, however, is undermined by the fact that it occurred eleven days after the nine-month temporary distributorship expired and one day after Filippini verbally terminated the Gidatex agreement; appellants have not alleged any specific instance of Gidatex soliciting sales in the Campaniello companies' exclusive territory during the period of their distributorship. Furthermore, according to the allegation, this sale occurred while the South American architect was *in Italy* at the appellees' display at a furniture show. Given these circumstances, appellants cannot extrapolate from this single sale that appellees wanted to supplant the Campaniello companies' sales system with direct solicitation in North and South America.

Appellant alleges that after July 7, 1994 Gidatex conducted its business in a manner designed to frustrate the Campaniello companies' ability to meet its minimum purchase requirements. Appellants allege that Gidatex, inter alia, shipped inferior and defective merchandise, discontinued manufacturing two-thirds of its furniture line, offered only inferior quality fabrics and discontinued advertising of the Saporiti line in the United States. Am. Compl. ¶ 103. Normally, allegations of mere nonperformance under a contract do not provide strong evidence of fraudulent intent. *See Murray v. Xerox Corp.*, 811 F.2d 118, 122 (2d Cir.1987). In such circumstances, fraudulent intent may only be inferred "when a defendant violates an agreement so maliciously and so soon after it is made that his desire to do so

before he entered into the agreement is evident." *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 185 (2d Cir.1995). On its face, the allegations here do not rise to a level of maliciousness. Gidatex did not refuse to perform the contract or in any other way repudiate, but simply did not perform well. We hesitate to find that merely ailing performance can be found malicious enough to support a claim of fraud, especially where Saporiti Italia, a poorly performing company, had recently declared bankruptcy because of faltering performance and a depressed market. *See Ouaknine v. MacFarlane*, 897 F.2d 75, 81 (2d Cir.1990) (finding allegations of breach of contract sufficient to support scienter only where "[i]t is difficult to imagine how such events could have occurred if the defendants who controlled them had not actually intended to defraud"). Thus, we do not find that Gidatex's poor performance of the contract supports an allegation of fraudulent intent.

Appellants also allege that "[u]pon information and belief ... the defendants withheld and failed to disclose to plaintiffs that: a) defendant Gidatex was a mere shell with no more than $12,000 of capital and had no financial ties with defendant Filippini's successful operating company." Am. Compl. ¶ 93(a). "Allegations of fraud cannot ordinarily be based 'upon information and belief,' except as to 'matters peculiarly within the opposing party's knowledge.'" *Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir.1986) (citation omitted). Even if Gidatex's financial status was peculiarly within appellees' knowledge, appellants have failed to provide a statement of facts upon which the belief is founded. The unsupported nature of the allegation weighs against finding it indicative of fraudulent intent.

Given the ambiguous nature and suspect import of each of the three factual assertions, the allegations, even taken together, are insufficient to raise a *strong* inference of fraudulent intent.[3]

---

3. Judge Patterson dismissed appellants' claims outright without leave to amend. A district court denial of leave to replead should only be disturbed for abuse of discretion. *See Chill v. General Electric Co.*, 101 F.3d 263, 271 (2d Cir. 1996). In general, leave to amend should be freely granted, especially where the complaint is dismissed under Rule 9(b). *Id.* Here, however, there is no indication in the record that appellants even sought leave to replead before the

### 3. Saporiti Italia and the Saporitis

While appellants nominally include all of the appellees in their claims of fraud involving the inducement of the Settlement Agreement and the Gidatex Agreement, they have not managed to allege specifically a sufficient basis to sustain these claims as against Saporiti Italia and Raffaele and Sergio.

Appellants have not actually alleged any conduct by Saporiti Italia following the stipulated dismissal of the earlier suit. Appellants' own affidavit reveals that Saporiti Italia underwent liquidation in January, 1994 and entered the Concordato Preventivo on May 8, 1994, before the settlement negotiations which resulted in a substitute distribution *contract between Gidatex and the Campaniello companies. After Gidatex leased the business of Saporiti Italia and later purchased Saporiti Italia, appellants dealt exclusively with Gidatex and the Campaniello companies purchased furniture only from Gidatex, not Saporiti Italia. Absent any action or representation by Saporiti Italia (a defunct company after May 8, 1994), there could not be fraud attributable to it.

Similarly, the amended complaint contains glancing allegations against Raffaele and Sergio as individuals after the 1994 Litigation. Appellants alleged that on June 14, 1994, "Filippini, Sergio and Raffaele further represented and stated that they all recognized and valued the relationship with plaintiffs and were committed to promote their unity of interests with plaintiffs and give maximum cooperation to advance plaintiffs' ability to sell the 'Saporiti' line and prevent direct sales by their other distributors to plaintiffs' customers in plaintiffs' exclusive territory." Am. Compl. ¶ 81. Appellants then allege that these representations "were false at the time they were made and were

known by Filippini, Sergio and Raffaele to be false." Am. Compl. ¶ 82.

Aside from the alleged assurance of cooperation, the only fact alleged involving either Raffaele and Sergio after the 1994 Litigation is Raffaele's unannounced visit to appellants' New York showroom on May 2, 1995. There are no facts which show how Sergio and Raffaele would gain concrete benefits from a fraudulent inducement and termination of the Gidatex Agreement, much less facts which suggest that Sergio and Raffaele had a clear opportunity to do so. *See Powers v. British Vita, P.L.C.,* 57 F.3d at 185 (stating that "clear opportunity arises when the defendant is already well positioned to carry out the fraudulent transaction, such as when he possesses the necessary trust and authority"). Nor are there facts which suggest that Sergio and Raffaele had no intention of cooperating with appellants to make the Gidatex Agreement successful for the Campaniello companies. Thus, appellants have failed to allege facts related to Sergio and Raffaele which raise a strong inference of fraudulent intent.

### III. Mandatory arbitration was stipulated

The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., establishes a liberal policy in favor of arbitration, *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), as a means to reduce "the costliness and delays of litigation." *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir. 1987) (citing H.R.Rep. No. 96, at 1, 2 (1924)). Moreover, "[t]he federal policy favoring arbitration is even stronger in the context of international transactions." *Deloitte Noraudit v. Deloitte Haskins & Sells,* 9 F.3d 1060, 1063 (2d Cir.1993) (citations omitted).

---

District Court, and "we do not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought." *Shields v. Citytrust Bancorp., Inc.,* 25 F.3d at 1132. In addition, without any indication by appellants of how further amendment would cure the deficiencies in pleading, we ordinarily do not find an abuse of discretion where appellants have already had ample time to amend the complaint. *See id.* ("It is not clear

that the failure of pleading could be remedied by further amendment, nor has [plaintiff] suggested how that could be done."). Given that two of the main reasons for affirming the dismissal—the inadequacy of the independent action in equity and the applicability of the arbitration clause—are principally decided independent of the adequacy of the fraud pleadings, amendment of the complaint would not cure appellants' claims.

The District Court dismissed appellants' claims against Gidatex because they were subject to mandatory arbitration. In reviewing the District Court's determination concerning the arbitrability of appellants' claims, the court must engage in a two-step process: first, it must determine whether the parties agreed to arbitrate, and second, it must determine whether the scope of the agreement encompasses the claims asserted. *Id.*

A. *Fraud going to the arbitration clause in particular*

■ Appellants concede that they are a party to a contract containing an arbitration clause, but argue that they have properly alleged a claim of fraud in the inducement of the arbitration clause that may be adjudicated by the court. Under the Federal Arbitration Act, a federal court faced with an arbitration clause must order arbitration to proceed in accordance with the terms of the agreement once it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. The Supreme Court has further elaborated that while a "fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate" may be adjudicated by the court, "the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967). Accordingly, the District Court ordered arbitration to proceed after finding that the complaint did "not demonstrate that the claims of fraudulent inducement and misrepresentation relate only to the arbitration clause, as opposed to the entire agreement." *Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.,* 1996 WL 437907, at *9. Appellants challenge this last determination.

Appellants note that they alleged that "[i]t was a part of the [defendants'] scheme to include an arbitration-in-Italy clause which they hoped would prevent plaintiffs from seeking redress in the New York courts where the remedies for fraud were more

extensive than in an arbitration in Italy." Am. Compl. ¶ 60. The amended complaint also alleges that "[h]ad plaintiffs known the defendants [sic] true intentions, they would never have agreed to the settlement of the action or to the inclusion of the arbitration-in-Italy clause." Am. Compl. ¶ 98. Thus, appellants contend, the court should have heard their claim because these allegations purportedly raise an issue as to fraud in the inducement of the arbitration clause in particular.

Appellants argue that their claim of fraud in the inducement of the arbitration clause in particular is factually indistinguishable from the one that the Supreme Court determined should be adjudicated by a federal court in *Moseley v. Electronic & Missile Facilities, Inc.,* 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818 (1963). In *Moseley,* the petitioner maintained that the defendant, a contractor, had enacted a fraudulent scheme whereby the defendant would obtain work and materials from subcontractors without making payments and then force the subcontractors to accept much less than the value of their claims. One of the means allegedly used to effect this scheme was the insertion in the subcontracts of a clause requiring arbitration of disputes in New York, even though the work was performed in Georgia. Consequently, the *Moseley* Court found that "the issue of fraud should first be adjudicated before the rights of the parties under the subcontracts can be determined." *Id.* at 171, 83 S.Ct. at 1817.

The only other case to consider *Moseley* in depth in similar circumstances is *Arnold v. Arnold Corp.,* 920 F.2d 1269 (6th Cir.1990). Facing the same allegation that an arbitration clause was part of a scheme to defraud, the Sixth Circuit stated that the plaintiff "does not argue that the inclusion of the arbitration clause in the contract was effected by superior bargaining power or that, for all practical purposes, it deprived him of his day in court, as was the case in *Moseley.*" *Id.* at 1278–79. The Supreme Court and Circuit Court decisions in *Moseley*[4] do not, however, seem to focus on either superior

4. The District Court opinion is not reported.

bargaining power or complete denial of a remedy.

Nevertheless, appellants' allegations concerning the arbitration-in-Italy clause lack important elements present in the allegations in *Moseley*. In *Moseley*, the challenged arbitration clause allowed the contractor to circumvent the provisions of the Miller Act, which expressly granted a cause of action to plaintiffs to sue in federal court in the district in which the contract was performed, which was in Georgia and not in New York. The Campaniello companies have adduced no similar particularized facts specific to the choice of forum or the arbitration clause which indicate how it was used to effect the scheme to defraud other than to suggest generally that the remedies for fraud were "more extensive" in New York than in Italy. We do not consider such conclusory allegations sufficient to establish that the arbitration clause in particular was a tool used to further a scheme to defraud.

We believe that the only way to reconcile *Prima Paint* with *Moseley* is to require some substantial relationship between the fraud or misrepresentation and the arbitration clause in particular. In *Prima Paint*, the Supreme Court clearly distinguished between fraud in the inducement of the arbitration clause itself, which may be considered by the federal court, and fraud in the inducement of the contract generally. 388 U.S. at 403–04, 87 S.Ct. at 1805–06. This distinction would be eviscerated if a claimant could transform a general fraud claim into fraud in the inducement of the arbitration clause merely by stating that the arbitration clause is an element of the scheme to defraud.

This fact becomes evident if one considers the evidentiary trial that would have to be conducted in this case to determine if there was fraud in the inducement of the arbitration clause. Since there is no fraud or misrepresentation that relates directly to the arbitration clause, the District Court would have to determine whether the appellees defrauded appellants into settling their case and accepting a sham contract with an arbitration clause; in short, the District Court would have to adjudicate the entire fraud claim. Similarly, in every instance where there is a fraud going to the contract generally and an allegation that the arbitration clause was "part of the scheme to defraud," the court would have to adjudicate the entire scheme to defraud. Consequently, there would never be an instance where a claim of fraud going to a contract generally would be sent to arbitration by a federal court.[5]

We interpret *Prima Paint* and *Moseley* consistently with a determination that there must be some substantial relationship between the fraud or misrepresentation and the arbitration clause in particular in order to protect the obvious distinction drawn in *Prima Paint* between the arbitrability of fraud relating to a contract generally and fraud in the inducement of the arbitration clause in particular. In *Prima Paint*, the Court stated that the federal court may adjudicate only those issues which go "to the 'making' of the agreement to arbitrate." 388 U.S. at 403–04, 87 S.Ct. at 1806–07. Although *Prima Paint*, which was decided after *Moseley*, states that the opinion is consistent with the decision in *Moseley*, *id.* at 404 n. 12, 87 S.Ct. at 1806 n. 12 the Court did not elaborate upon the details of the fraud involved in *Moseley* in either case. Given these circumstances, we read *Moseley* narrowly to give effect to the clearer language of *Prima Paint*.

There is no indication here that there was any misrepresentation or fraud related to the arbitration clause itself. Here, the parties negotiated the contract in Italy and appellants used Italian counsel in those negotiations; thus, they agreed to arbitration in Italy. There are no allegations that appellants were not aware of the content or import of the arbitration clause; the parties were involved in arms-length negotiations over the specific terms of the Gidatex Agreement and separately negotiated each of the amendments, including the arbitration clause.

In short, we find no facts which suggest that fraud was "an issue which goes to the 'making' of the agreement to arbitrate."

---

5. Of course, where the party raising the fraud claim would rather go to arbitration, then the defendant would be forced to go to arbitration.

Thus, the arbitration clause would only act to provide a fraud claimant with a choice of forum.

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. at 403–04, 87 S.Ct. at 1805. Other courts in this Circuit have similarly required some nexus between the alleged fraud or misrepresentation and the arbitration clause in particular. *See, e.g., Castro v. Marine Midland Bank, N.A.,* 695 F.Supp. 1548, 1551 n. 1 (S.D.N.Y.1988) (stating that "plaintiff must demonstrate that whatever fraud occurred misled plaintiff as to the arbitration agreement itself"); *Rush v. Oppenheimer & Co.,* 681 F.Supp. 1045, 1053 (S.D.N.Y.1988) (finding that courts retain jurisdiction only over "claims that statements pertaining to the underlying agreement were fraudulent with respect to the arbitration agreement").

Appellants have only claimed that the alleged misrepresentations and omissions fraudulently induced them to enter into a settlement. They have not suggested that they were in any way misled as to the import or content of the arbitration clause; in fact, the arbitration clause was specifically amended as a result of arms-length negotiations. Appellants may not now establish a connection between the alleged fraud and the arbitration clause in particular merely by adding the allegation that the arbitration clause was a part of the overall scheme to defraud.

### B. *Scope of the arbitration agreement*

 Having found that the appellants have not raised an issue of fraud as to the arbitration clause, we next address the scope of the arbitration agreement. Consistent with the federal policy of encouraging arbitration, the federal courts construe the scope of such agreements broadly. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. at 24–25, 103 S.Ct. at 941–942 (stating "any doubts concerning the scope of arbi-

trable issues should be resolved in favor of arbitration").

 The Gidatex Agreement stipulated that "[a]ny controversy between the two parties regarding the above agreement" is to be resolved through Italian arbitration. When reviewing the scope of an arbitration agreement, this Court must focus on the factual allegations in the complaint and determine whether "the allegations underlying the claims 'touch matters' covered by the parties' ... agreements." *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d at 846. Appellants' second, third and fourth claims essentially involve claims that appellees sought fraudulently to violate and terminate the Gidatex Agreement; clearly these claims touch matters involved in the agreement. Similarly, the fourth claim seeking damages for unjust enrichment alleges that Gidatex received "unjust" benefits through "repudiation and termination of plaintiffs' agency agreement." Am. Compl. ¶ 127. This claim is naturally dependent on appellants' rights under the Gidatex Agreement and also touches matters covered by the Gidatex Agreement; thus, the unjust enrichment claim is also subject to mandatory arbitration.[6]

 In addition, we agree with appellees that the arbitration clause extends to disputes between the Campaniello companies and Filippini. "Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1360 (2d Cir.), *cert. denied,* 510 U.S. 945, 114 S.Ct. 385, 126 L.Ed.2d 333 (1993). Appellants have not alleged that they dealt with Filippini outside of his capacity as an agent for Gidatex. Filippini uttered the alleged misrepresentations during negotiations between

---

6. In addition, we specifically note that our Opinion necessarily disposes of the entire claim for unjust enrichment. To the extent that the claim was or could have been asserted in the 1994 Litigation, the claim is barred by the doctrine of res judicata. Furthermore, the unjust enrichment claim against Saporiti Italia and the Saporitis fails because, as noted previously, Saporiti Italia was not an active entity beyond the short-lived 1994 Litigation and the Saporitis are not alleged to have owned or had a beneficial inter-

est in Gidatex, which purportedly seized the goodwill created by appellants. Thus, the appellants have failed to allege adequately that Saporiti Italia or the Saporitis "hold property" which unjustly enriches them. *Chemical Bank v. Equity Holding Corp.,* 228 A.D.2d 338, 644 N.Y.S.2d 709, 710 (1st Dep't 1996) ("Unjust enrichment occurs where a party holds property 'under such circumstances that in equity and good conscience he ought not to retain it' ...." (citation omitted in original)).

Gidatex and the Campaniello companies and entered into the Gidatex Agreement as the company's administrator. Since appellants' claims against Filippini arise out of his relationship with Gidatex, they are also subject to mandatory arbitration. *See Creative Securities Corp. v. Bear Stearns & Co.,* 671 F.Supp. 961, 968 n. 11 (S.D.N.Y.1987) (finding claims against employees which "arise out of the employee relationship" are subject to arbitration clause in contract with principal), *aff'd,* 847 F.2d 834 (2d Cir.1988); *Brener v. Becker Paribas Inc.,* 628 F.Supp. 442, 451 (S.D.N.Y.1985) (same).

## IV. *Conclusion*

Since we find grounds for affirming the District Court determination based on the reasoning above, it is unnecessary to address the other bases for the District Court's dismissal of the amended complaint.

The judgment of the District Court is affirmed.