**Edwin De JESUS, individually and on behalf of all others similarly situated, Carolyn Penzo, Les Totans, William Cooke, Cary Welsh, Leonard Toland, Randy J. Lane, Deborah Lynne Debordes, Nixon McCune and Ronald G. Redding, Plaintiffs–Appellants,**

v.

**SEARS, ROEBUCK & CO., INC., Defendant–Appellee.**

No. 713, Docket 95–7424.

United States Court of Appeals, Second Circuit.

Argued Dec. 20, 1995.

Decided June 25, 1996.

Patrick M. Wall, New York City, for Plaintiffs–Appellants.

Theodore N. Mirvis, New York City (Paul K. Rowe, Meir Feder, Wachtell, Lipton, Rosen & Katz, New York City, of counsel), for Defendant–Appellee.

Before: KEARSE, MAHONEY, and PARKER, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiffs-appellants Edwin De Jesus, Carolyn Penzo, Les Totans, William Cooke, Cary Welsh, Leonard Toland, Randy J. Lane, Deborah Lynne Debordes, Nixon McCune, and Ronald G. Redding ("Plaintiffs") appeal from a judgment entered March 28, 1995 in the United States District Court for the Southern District of New York, Michael B. Mukasey, *Judge*, that: (1) dismissed the federal claims stated in their third amended complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; (2) declined to exercise supplemental jurisdiction over their pendent state law claims; and (3) denied leave to amend the Complaint. The Complaint alleged that defendant-appellee Sears, Roebuck & Co., Inc. ("Sears") violated § 1 of the Sherman Act, as amended, 15 U.S.C. § 1,[1] § 3 of the Clayton Act, 15 U.S.C. § 14,[2] and a provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a)–(c).[3]

The complaint also alleged pendent state law claims.[4]

On appeal, Plaintiffs contend that the Complaint was improperly dismissed. We disagree and affirm the judgment of the district court.

## Background

This suit arises out of a Neighborhood Office Agent ("NOA") program instituted by Allstate Insurance Company ("Allstate") in late 1984 or early 1985 through which Allstate offered its agents the opportunity to establish local neighborhood Allstate offices. According to Sears, this program enabled participating agents to choose their own office sites, select their own staff, decide upon the level of office expenses, and maintain operational control over their own offices. Allstate would reimburse each NOA for office expenses up to a total equalling a percentage of premiums earned by the agent, with the formula weighted to new business

1. Section 1 provides in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal...."

2. Section 14 provides:

   It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce. Section 4(a) of the Clayton Act, as amended, 15 U.S.C. § 15(a), authorizes treble damage actions by "any person who shall be injured in his business or property by reason of" a violation of, *inter alia,* 15 U.S.C. §§ 1 or 14.

3. Section 1962(a)–(c) provides in pertinent part:
   (a) It shall be unlawful for any person who has received any income derived, directly or

indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

   (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

   (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
   18 U.S.C. § 1964(c) authorizes treble damage actions by "[a]ny person injured in his business or property by reason of a violation of section 1962."

4. Plaintiffs also brought a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* which was withdrawn prior to this appeal.

production. Through this NOA program, Allstate hoped to increase business and profits, while providing its agents with entrepreneurial opportunities and greater flexibility and control over their own offices. *See generally Deus v. Allstate Ins. Co.*, 15 F.3d 506, 511–12 (5th Cir.) (describing NOA program), *cert. denied,* —— U.S. ——, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994).

Plaintiffs are residents of various states who worked as NOAs for Allstate, a subsidiary of The Allstate Corporation. They sue both individually and as representatives of the class of NOAs allegedly injured by Sears. Sears is a New York corporation and has its principal place of business in Illinois. It conducts business in all fifty states, and at all relevant times was the parent corporation of The Allstate Corporation.[5]

Plaintiffs allege that Sears maintained Allstate as a "criminal enterprise" that "coerce[d] and/or fraudulently induce[d] its current agents and ... fraudulently induce[d] others who wished to become agents ... to accept the status of [NOAs]." This was allegedly accomplished, *inter alia,* by (1) knowingly making false statements that Allstate would reimburse NOAs for virtually all out-of-pocket expenses associated with operating an office, and assuring potential NOAs that they would earn substantially more income as NOAs; (2) threatening Allstate agents with termination if they chose not to enter the NOA program; and (3) falsely assuring prospective NOAs that Allstate's marketing resources would be made available to assist them in numerous ways, including selecting sites, negotiating leases, choosing equipment, staffing offices, and processing claims. plaintiffs-appellants claim that Sears' purpose for designing this fraudulent scheme was three-fold:

> (a) to cause the NOAs to shoulder the lion's share of expenses, thus removing from Allstate the cost of field operations; (b) to ensure the failure of these NOAs after they had had time to develop a substantial book of business, so that Allstate could claim the benefit of the NOA's ef-

forts by obtaining the "book of business" developed by the NOA at his or her own expense and risk; and (c) to put the NOAs in such a state of financial insecurity as to coerce them into changing their status from that of NOA to that of Neighborhood Exclusive Agent ("NEA"), thus causing the NOA to abandon his or her pension and welfare benefits —— benefits to which a[n] NEA was not entitled.

In their RICO Case Statement, Plaintiffs assert that Sears achieved these objectives through the aid of Allstate's upper level management officials and local sales managers. However, no specific Sears officials or employees are alleged to have personally participated in the scheme. Instead, Plaintiffs describe Sears' relationship to the alleged RICO enterprise, Allstate, as follows:

> Sears operated and managed the enterprise through corporate control. As the 100%, then 80%, and controlling shareholder of Allstate, Sears has historically and is currently empowered to appoint Allstate's management, including its Board of Directors and its senior officers. In this fashion, Sears determines the business objectives and goals of Allstate, and designates those persons who manage and operate Allstate in accordance with those objectives and goals.

In sum, Plaintiffs claim that Sears achieved its fraudulent objectives because "through its control over [The Allstate Corporation, Sears was] able to control Allstate."

Plaintiffs also assert two antitrust claims pursuant to 15 U.S.C. §§ 1 and 14. Their complaint alleges that Sears, "through Allstate," engaged in unlawful "tying" arrangements by: (1) requiring NOAs who wanted to advertise individually in the Yellow Pages to arrange for such advertising exclusively through Woodward Direct—an agency allegedly owned or controlled by Sears; and (2) requiring each NOA to lease a Sears computer at excessive cost (compared to the cost at which other equally effective computers were available) in order to access the Allstate database.

---

5. On June 9, 1993, Sears completed a public offering of 19.9% of its ownership interest in The Allstate Corporation; Sears' remaining owner-ship interest in that corporation was spun off to Sears' shareholders on June 30, 1995.

Sears moved to dismiss the Complaint, contending that Plaintiffs had failed to state a federal claim, and that the district court should not exercise supplemental jurisdiction over their pendent state law claims. In an opinion and order dated March 20, 1995, the district court granted Sears' motion. The court concluded that Plaintiffs' RICO claims failed to allege fraud with the degree of particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, and especially that "both the complaint and RICO Case Statement fail to allege fraud with particularity against Sears, the named defendant in this case." The court also determined that no unlawful "tying" arrangement was alleged as to the required use either of Woodward Direct to advertise in the Yellow Pages, or of a Sears computer to access the Allstate database. In view of the dismissal of Plaintiffs' federal claims, the district court declined to exercise supplemental jurisdiction over their state law claims. The court also denied Plaintiffs leave to amend their complaint in view of their prior opportunities to do so.

This appeal followed.

### Discussion

■ We review a Rule 12(b)(6) dismissal *de novo*. *Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir.1996); *Dorking Genetics v. United States*, 76 F.3d 1261, 1269 (2d Cir. 1996).[6] On appeal, Plaintiffs argue that: (1) the Complaint alleged valid RICO claims; (2) the Complaint adequately alleged unlawful "tying" arrangements under the Sherman and Clayton Acts; and (3) in any event, the district court should have granted Plaintiffs an opportunity to replead their RICO claims with sufficient particularity. We address these contentions in turn.

### A. *The RICO Claims.*

■ "A motion to dismiss is designed to test the legal sufficiency of the complaint, and thus does not require the Court to examine the evidence at issue." *Carey v. Mt.*

*Desert Island Hosp.*, 910 F.Supp. 7, 9 (D.Me. 1995) (citing *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985)). Accordingly, we must accept as true all well-pleaded factual allegations in the Complaint and view them in the light most favorable to Plaintiffs. *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2942, 92 L.Ed.2d 209 (1986). The complaint is deemed to include any document annexed to it as an exhibit. *See* Fed.R.Civ.P. 10(c). Even viewing all of Plaintiffs' RICO allegations in this favorable light, however, we find no basis upon which to conclude that Sears is a proper defendant for Plaintiffs' RICO claims.

The Complaint and RICO Case Statement name Sears as a defendant solely because of its corporate relationship to Allstate. As noted above, Plaintiffs claim that "Sears operated and managed the [RICO] enterprise through corporate control[,]" and that "[i]n this fashion, Sears determine[d] the business objectives and goals of Allstate, and designate[d] those persons who manage[d] and operate[d] Allstate in accordance with [the fraudulent RICO] objectives and goals." There is no allegation that Sears employees acted independently to further this alleged RICO scheme.

"In some instances, the corporate relationship between a parent and its subsidiary [is] sufficiently close ... to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other. As a general matter, however, a corporate relationship alone is not sufficient to bind a [parent corporation for the actions of its subsidiary]." *Thomson–CSF, S.A. v. American Arbitration Ass'n.*, 64 F.3d 773, 777 (2d Cir.1995). Indeed, "[o]wnership by a parent of all its subsidiary's stock has been held an insufficient reason in and of itself to disregard distinct corporate entities. Actual domination, rather than the opportunity to exercise control, must be shown." *Williams v. McAllister Bros. Inc.*, 534 F.2d 19, 21 (2d Cir.1976) (citations omitted); *cf. Volkswagenwerk Aktiengesellschaft v. Beech Aircraft*

---

6. Because the district court did not reach the issue of class certification, our decision cannot properly bind the alleged class. *Pharo v. Smith*, 621 F.2d 656, 664 (5th Cir.), *modified on other grounds*, 625 F.2d 1226 (5th Cir.1980) (per curiam). "We therefore treat this case as one brought by the named plaintiffs individually, not as members of a class." *Pharo*, 621 F.2d at 664 (collecting cases).

*Corp.,* 751 F.2d 117, 120 (2d Cir.1984) (in reviewing grant of Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, stating that "[t]he officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to [personal] jurisdiction").

■ To overcome "the 'presumption of separateness' afforded to related corporations," Plaintiffs must come forward with "the showing of actual domination required to pierce the corporate veil." *Williams,* 534 F.2d at 22 (quoting *American Renaissance Lines, Inc. v. Saxis S.S. Co.,* 502 F.2d 674, 677 (2d Cir.1974)). Plaintiffs assert that the fraudulent actions taken by Allstate employees were "caused by, known to and ratified by Sears." However, the pleadings are devoid of *any* specific facts or circumstances supporting this assertion. "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *Palda v. General Dynamics Corp.,* 47 F.3d 872, 875 (7th Cir.1995); *see also Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995) (" '[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.' " (quoting *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993))); *Grossman v. Citrus Assocs. of New York Cotton Exch., Inc.,* 706 F.Supp. 221, 229 (S.D.N.Y.1989) (conclusory allegations of participation in a fraudulent scheme or bad faith will not withstand a Rule 12(b)(6) motion to dismiss). The Complaint does not allege facts from which it may be inferred that Sears dominated Allstate's administration of the NOA program, or that Sears employees themselves acted to defraud Plaintiffs. We accordingly conclude that Sears is not an appropriate defendant with respect to Plaintiffs' RICO claims, and that these claims were properly dismissed.

B. *The Antitrust Claims.*

■ As previously described, the Complaint alleges two unlawful "tying" arrangements in violation of 15 U.S.C. §§ 1 and 14, *supra* notes 1 and 2. "A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchase[ ] a different (or tied) product.' " *Yentsch v. Texaco, Inc.,* 630 F.2d 46, 56 (2d Cir.1980) (quoting *Northern Pac. Ry. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958)). "[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 12, 104 S.Ct. 1551, 1558, 80 L.Ed.2d 2 (1984); *see also Allen–Myland, Inc. v. IBM Corp.,* 33 F.3d 194, 200 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 684, 130 L.Ed.2d 615 (1994).

As to the detailed requirements to state a tying claim—

[W]e have required allegations and proof of five specific elements before finding a tie illegal: first, a tying and a tied product; second, evidence of actual coercion by the seller that forced the buyer to accept the tied product; third, sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product; fourth, anticompetitive effects in the tied market; and fifth, the involvement of a "not insubstantial" amount of interstate commerce in the "tied" market.

*Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.,* 880 F.2d 1514, 1516–17 (2d Cir. 1989) (citing *Yentsch,* 630 F.2d at 56–57). These elements are common to claims asserted under either the Sherman or Clayton Acts. *See Airweld, Inc. v. Airco, Inc.,* 742 F.2d 1184, 1189 n. 2 (9th Cir.1984) ("[T]he elements for establishing a [tying] violation under each provision are virtually the same."), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985); *Detroit City Dairy, Inc. v. Kowalski Sausage Co.,* 393 F.Supp. 453, 458 (E.D.Mich.1975) ("With respect to [the tying] definition, there is no need to differentiate between the Sherman and Clayton Acts. The definition of a tying arrangement is the same for both.").

Plaintiffs' first tying claim charges that NOAs were forced, as a condition of employment, to advertise through an entity allegedly controlled by Sears.[7] Thus, employment as an NOA is the alleged tying product, and advertising in the Yellow Pages through a Sears-controlled company is the alleged tied product. The district court concluded that employment, standing alone, cannot constitute a tying product within the meaning of the antitrust laws. We agree.

Plaintiffs invoke *Bazal v. Belford Trucking Co.*, 442 F.Supp. 1089, 1093–96 (S.D.Fla. 1977), to argue that an employment contract can be a tying product. That case involved an agreement to rent a truck from one affiliated defendant, and to use that truck in the employ of a second affiliated defendant. The district court ruled that "a contract of employment can fall within the category of a 'tying product.'" *Id.* at 1094. In doing so, it relied upon cases in which franchise contracts and credit, although "somewhat less tangible than a conventional product or service," *id.*, had been treated as a qualifying "product" for purposes of tying analysis. *Bazal* specifically pointed to a Second Circuit precedent, *Susser v. Carvel Corp.*, 332 F.2d 505 (2d Cir.1964), *cert. dismissed,* 381 U.S. 125, 85 S.Ct. 1364, 14 L.Ed.2d 284 (1965), in support of its ruling. *See* 442 F.Supp. at 1094.

*Susser*, however, involved a sale of both the tying product and the tied product to the party complaining of an antitrust violation. This pattern accords with the "fundamental principle of antitrust law that an illegal tying arrangement requires that at least two products and/or services be purchased by the same individual; that is, there must be lineal movement between the products." *Waldo v. North Am. Van Lines, Inc.*, 669 F.Supp. 722, 731 (W.D.Pa.1987) (collecting cases). It is simply implausible to regard Plaintiffs' employment, a service which they provide to Allstate and for which they are paid by Allstate, as something that Allstate or Sears is selling to Plaintiffs. Thus, whatever other legal theories might be invoked regarding this situation,[8] this tying claim fails at the threshold.

■ Plaintiffs' other tying claim concerns the alleged requirement to lease a Sears computer for access to the Allstate database. This claim assumes that access to the Allstate database, or the database itself, can be deemed a tying or tied "product." We reject the assumption. The database is not generally available to persons willing to pay for it. Rather it is a body of information that is made available to Allstate agents, including NOAs, in connection with their employment. *See United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch.*, 892 F.Supp. 890, 902 (W.D.Tex.1995) ("[E]lectronic access to the information contained in [a database maintained by an insurance company for its agents] is not a 'product' capable of tying IBM computers...."). Again, this tying claim fails at the threshold.

## C.  *Denial of Leave to Amend.*

■ After dismissing the Complaint, the district court refused to grant Plaintiffs leave to file a further amended complaint. We review this decision for an abuse of discretion. *See San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 815 (2d Cir.1996); *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987); *Luce v. Edelstein*, 802 F.2d 49, 57 (2d Cir.1986); *Armstrong v. McAlpin*, 699 F.2d 79, 93–94 (2d Cir.1983). While we have found it an abuse of discretion to dismiss allegations of fraud without granting a party

---

7. Because both tying claims allege a direct benefit either to Sears or to an entity (other than Allstate) owned or controlled by Sears, we assume for purposes of this appeal that Sears is a proper defendant with respect to Plaintiffs' antitrust claims, as distinguished from their RICO claims.

8. The complaint alleges that the conduct charged in this case "constituted wrongful misrepresentation, fraud, equitable fraud, fraudulent inducement to cause others to enter into contracts, coercive tactics to compel others to enter into contracts, failure to disclose information, the intentional or reckless or negligent giving of false tax instructions followed by the recipient to his or her detriment, breach of fiduciary duty, *prima facie* torts and other wrongful conduct under the applicable laws of each of the states in which the NOAs reside and in which Sears does business, including state RICO and anti-trust statutes."

leave to file an initial amendment of its complaint to comply with Rule 9(b) of the Federal Rules of Civil Procedure, *see Devaney*, 813 F.2d at 569; *Luce*, 802 F.2d at 56–57, we have also upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim, *see Armstrong*, 699 F.2d at 93–94 ("Because the complaint whose allegations were being considered by the district court was plaintiffs' second amended complaint, the district court did not abuse its discretion in refusing to give plaintiffs a fourth attempt to plead."); *see also Luce*, 802 F.2d at 56 ("In cases where such leave has not been granted, plaintiffs have usually already had one opportunity to plead fraud with greater specificity...."). Plaintiffs were accorded four opportunities to plead their claims in this case, and the deficiencies in their federal claims are fundamental. *See San Leandro*, 75 F.3d at 815 (leave to replead not required when proposed amendment would not cure complaint's deficiency). The district court did not abuse its discretion by refusing them a fifth opportunity. Nor, having dismissed Plaintiffs' federal claims, did the district court abuse its discretion by declining to exercise supplemental jurisdiction over the myriad state law claims, *see supra* note 8, alleged by Plaintiffs. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## Conclusion

The judgment of the district court is affirmed.