In re Steven W. GORDON, Debtor.

**Community Memorial Hospital, Plaintiff,**

v.

**Steven W. Gordon, Defendant.**

**Bankruptcy No. 96–33482.**
**Adversary No. 97–3001.**

United States Bankruptcy Court,
D. Connecticut.

March 22, 1999.

Pasquale Young, Berdon, Young & Margolis, P.C., New Haven, CT, for plaintiff.

Matthew K. Beatman, Zeisler & Zeisler, P.C., Bridgeport, CT, for defendant.

## MEMORANDUM OF DECISION ON AMENDED MOTION TO DISMISS COMPLAINT

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

In this adversary proceeding, Community Memorial Hospital (hereafter the "Plaintiff"), asks this Court to determine that certain debts arising from loans made to the Debtor/Defendant, Steven W. Gordon, a physician (hereafter the "Defendant"), are non-dischargeable: i) as an "educational benefit or stipend" pursuant to Bankruptcy Code Section 523(a)(8); and, ii) because they were obtained by "false pretenses or, alternatively, actual fraud", see Bankruptcy Code Section 523(a)(2). Presently before the Court is the Defendant's amended motion to dismiss the underlying complaint for: i) failure to state a claim upon which relief can be granted, see Rule 12(b)(6) F.R.Civ.P., made applicable to bankruptcy by Rule 7012(b) F.R.Bankr.P.; ii)

failure to plead with requisite particularity, *see* Rule 9(b) F.R.Civ.P., made applicable to bankruptcy by Rule 7009 F.R.Bankr.P.; and, iii) additional grounds, *see* footnote 3, *infra.* Having now considered the Defendant's amended motion, objection thereto, supporting memoranda of law, and argument of counsel, the Court renders this memorandum of decision.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. § 157(a)(b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(*l*).

## III. PROCEDURAL BACKGROUND

On October 16, 1996, the Defendant filed a voluntary petition under Chapter 7 (hereafter the "Bankruptcy Case") of the Bankruptcy Code.[1] On January 2, 1997, the Plaintiff, a Wisconsin non-profit corporation, filed a timely two-count Complaint to Determine Nondischargeability of Debt (hereafter the "Complaint"). The First Count seeks a determination of nondischargeability pursuant to "11 U.S.C. § 523(8)" (sic). The Second Count alleges that the loans were procured by "false pretenses or, alternatively, actual fraud", but does not cite a subsection of § 523. The Complaint also alleges that on November 19, 1996, the Plaintiff secured a state court judgment against the Defendant for $76,476.62.[2] On January 30, 1997, an order entered in the Bankruptcy Case which discharged all of the Defendant's dischargeable debts.

On February 27, 1997, the Defendant filed a Motion to Dismiss Complaint (hereafter the "Motion"). With regard to the First Count, the Defendant argues that the Complaint is defective and should be dismissed because the Plaintiff fails to allege that at the time the loan was tendered, the Defendant "was a student or enrolled in some form of school." *Motion* at 1. With regard to the Second Count, the Defendant requests that the Complaint be dismissed, alleging that the Plaintiff has failed to plead fraud with the particularity required by Rule 9(b) F.R.Civ.P., made applicable to bankruptcy by Rule 7009 F.R.Bankr.P.[3] On March 6, 1997, the Plaintiff filed a general objection to the Motion.

On April 22, 1997, the Defendant filed an Amended Motion to Dismiss Complaint (hereafter the "Amended Motion"). In addi-

---

1. The Defendant listed liabilities of $91,430.20, consisting of an $80,000.00 debt to the Plaintiff and credit card debt, *see* Schedule F. He owned personal assets of $26,600.00, *see* Schedule B, and earned a gross monthly salary of $8,461.54, with a net of $6,201.00, *see Schedule I.* He scheduled monthly expenditures of $6,095.00 for himself, his wife and child, including $2,750.00 for payment of student loans held by himself and his wife, *see* Schedule J. On December 11, 1996, the Defendant filed an Amended Schedule J which listed "Other . . . . . Student Loans (Debtor and Spouse)." The Amended Schedule J enumerated loans held by the Defendant and his wife in the total sum of $204,796.17 with total monthly payments of $2,750.00. The Defendant's Statement of Financial Affairs listed a pending contract action with the Plaintiff in the Circuit Court of Oconto County in the State of Wisconsin.

2. The Plaintiff neither sought nor obtained relief from the automatic stay provision of § 362(a), *see* § 362(d) of the Bankruptcy Code, to prosecute this state court action to a post-petition judgment. The validity of this judgment, however, has not been questioned by the Defendant.

3. The Defendant asserts two additional grounds upon which the Complaint should be dismissed. First, he contends that the Plaintiff incorrectly cites the relevant provision as " § 523(8)" in the First Count, and fails to specify the appropriate subsection of § 523 for the Second Count. The Plaintiff has acknowledged the error in both instances and has clarified its position in subsequent papers and at the hearing on the Motion to the satisfaction of the Court. *Tr.* at 29–30. Further, the Defendant represented to the Court that he was not misled by the incomplete citations. *Tr.* at 11, 19. Second, the Defendant argues that the Plaintiff failed to include a specific statement in each count requesting that its debt be declared nondischargeable. The lack of a specific decretal paragraph or statement requesting that the debt be declared nondischargeable will not serve as valid grounds to dismiss where, based on the nature of the proceeding and the substance of the pleading, it is clear that a determination of non-dischargeability is the relief sought. Further, Rule 8(f) F.R.Civ.P., made applicable to bankruptcy by Rule 7008(a) F.R.Bankr.P. mandates that "[a]ll pleadings shall be ... construed as to do substantial justice."

tion to the previous allegations, the Amended Motion argues that the Complaint fails to state a claim upon which relief can be granted because the subject debt is not based on an "educational loan" thereby making § 523(a)(8) inapplicable.[4] Significantly, the Defendant attached the Community Memorial Hospital, Inc. Physician Recruitment Agreement (hereafter the "Agreement") as Exhibit A to its memorandum of law in support of that contention.

On April 23, 1997, a hearing was held on the matter and the Court heard oral arguments. At the hearing, both parties conceded that although the Agreement was not attached to the Complaint, it was necessary and appropriate for the Court to evaluate the Agreement in order to resolve the Amended Motion. *See* Tr. at 13, 25, 28.

## IV. FACTUAL BACKGROUND

The relevant facts are not disputed. On October 29, 1992, the Plaintiff and Defendant entered into the Agreement. By its terms, the Agreement, *inter alia*, obligated the Defendant to commence by November 1, 1992, a two year residency program with a specialty of family practice at the University of Wisconsin Medical School. *See* ¶ 1.1. The Defendant was also bound to develop by November 1, 1994, a full-time family practice in Oconto Falls, Wisconsin, and to maintain it for at least two years. *See* ¶ 1.2. In exchange, the Plaintiff agreed to, *inter alia*, guarantee the Defendant's income during his practice, *see* ¶ 2.1, and provide for Residency Program Loan Subsidies to the Defendant, *see* ¶ 2.2., in the form of an initial advance of $10,000.00 upon the execution of the Agreement, *see* ¶ 2.2.1, and $24,000.00 ($2,000.00 per month) in the Defendant's first year of residency and $36,000.00 ($3,000.00 per

month) in his second year, *see* ¶ 2.2.2. With regard to repayment of those amounts, ¶ 2.2.3 of the Agreement provided in relevant part:

*Repayment of Additional Subsidy Amounts.* The amount paid by the Hospital to the Physician under Sections 2.2.1 and 2.2.2 ... shall be treated as a loan to the Physician. In exchange for the above Residency Program Subsidy amounts, Physician agrees to repay the Hospital any amounts paid under Sections 2.2.1 and 2.2.2 as follows:

(a) The Physician's total repayment obligation shall be forgiven by the Hospital if the Physician continues a full-time medical practice in Oconto Falls for a two (2) year period following the commencement of his medical Practice. If the Physician should no longer maintain a medical practice in Oconto Falls prior the completion of this two year period, all amounts paid to the Physician under Section 2.2.1 and 2.2.2. shall become immediately due and payable.

If the Physician has any repayment obligation pursuant to this section, Physician shall pay interest on such amounts as defined below....

The Plaintiff advanced the total sum of $70,000.00 to the Defendant as contemplated by the foregoing provisions.[5] After the completion of his residency, the defendant failed to establish a family medical practice in Oconto Falls.[6] Pursuant to the Agreement, the amounts became immediately due and payable. *See* ¶ 2.2.3(a). The Plaintiff commenced a breach of contract action in state court and on November 19, 1996, was awarded a judgment of $76,476.62.

---

**4.** Although the Plaintiff did not file an objection to the Amended Motion, it filed, on April 23, 1997, a *Plaintiff's Supplemental Memorandum of Law on Defendant's Motion to Dismiss* directing the Court's attention to *U.S. Department of Health and Human Services v. Smith*, 807 F.2d 122 (8th Cir.1986) discussed *infra* at footnote 9.

**5.** The Defendant does not dispute the fact that the Plaintiff advanced monies to him. In fact, Schedule F lists that sum as an unsecured debt. *See footnote 1, infra.*

**6.** The Defendant also does not dispute the fact that he did not establish a family medical practice in Wisconsin, *see Defendant's Memorandum of Law* at 2. The record is clear on the point that the Defendant breached the Recruitment Agreement, but is unclear as to the nature and extent of such breach. The lack of clarity of that issue does not impact the resolution of the Amended Motion.

## V. DISCUSSION

A motion to dismiss is designed to test the legal sufficiency of the complaint and is not intended to weigh the sufficiency of evidence which might be presented at trial. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). *See also Gant v. Wallingford Board of Ed.,* 69 F.3d 669, 673 (2d Cir.1995) ("The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims") (citations and internal quotation marks omitted). The motion should be granted where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In considering a motion to dismiss, the court must read the complaint generously and "accept as true all well-pleaded factual allegations in the [c]omplaint and view them in the light most favorable to [plaintiff]." *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 69 (2d Cir.1996), *cert. denied,* 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996) (*citing Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). *See also Grandon v. Merrill Lynch & Co., Inc.,* 147 F.3d 184, 188 (2d Cir.1998). Conclusory allegations or legal conclusions designed as factual conclusions will not withstand a motion to dismiss. *De Jesus v. Sears, Roebuck & Co., supra,* 87 F.3d at 69.

On a motion to dismiss, the court's purview is limited to "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993). *See also De Jesus v. Sears, Roebuck & Co., Inc., supra* at 69; *S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.,* 84 F.3d 629, 633–34 (2d Cir. 1996). The court may also consider documents (1) in the plaintiff's possession, (2) of which the plaintiff had knowledge and relied on in bringing suit, or (3) that are integral to the plaintiff's claim, but which the plaintiff chose not to attach to the complaint or incorporate by reference. *See Cortec Industries, Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *ABF Capital Mgmt. v. Kidder Peabody & Co. (In re Granite Partners, L.P.),* 210 B.R. 508, 514 (Bankr.S.D.N.Y.1997). It is upon that authority, and the parties consent, that the Court will consult the Agreement to resolve the Amended Motion.[7]

### A. Dismissal of the First Count under § 523(a)(8)

The Bankruptcy Code provides for a discharge to be granted to the "honest but unfortunate debtor" who wishes to take advantage of a "new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (citation and internal quotation marks omitted). That discharge, however, is not limitless as § 523(a) excludes certain obligations from the "general policy of discharge where the public policy at issue outweighs the debtor's need for a fresh start." *Santa Fe Medical Services, Inc. v. Segal (In re Segal),* 57 F.3d 342, 346 (3d Cir.1995). One such exception, applicable to student loans or educational loans, is carved out by § 523(a)(8) which provides, in pertinent part:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> \* \* \* \* \* \*
>
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received

---

7. Where a party submits extraneous documents in support of its motion to dismiss, and the court decides to consider those documents, Rule 12(b)(6) requires that the motion be converted to one for summary judgment. *See Cortec Industries, supra* at 47. However, where the "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.* at 48.

as an educational benefit, scholarship or stipend....

11 U.S.C. § 523(a)(8) (West 1990).

This Court previously noted that through the enactment of § 523(a)(8):

> Congress sought to reduce bankruptcy defaults, and thereby advance the original purposes of the student loan programs, i.e. to assure that students attending college would have reasonable access to low interest rate loans. Congress' broad purpose was to keep our student loan programs intact, thereby benefitting future students whose education would not be possible without a continued recycling of funds.

*Stein v. Bank of New England, N.A. (In re Stein)*, 218 B.R. 281, 285–86 (Bankr.D.Conn. 1998) (citations and internal quotation marks omitted). By excepting educational loans from discharge, Congress aimed to keep intact student access to funds and prevent abuse to the system by those students who benefitted from an educational loan and filed bankruptcy soon after graduation. *In re Segal, supra,* 57 F.3d at 348. In accomplishing its purpose, Congress made clear that the protected loans were "educational loans" which were "made without business consider-ations, without security, without cosigners, and relying for repayment solely on the debtor's future increased income resulting from the education." H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977).

The answer to the specific question before the Court, whether the loans extended by the Plaintiff constitute educational obligations within the scope of § 523(a)(8), is found by examining the status of the Defendant at the time the Agreement was executed, and the purpose or nature of the loan. At the time the loan was made the Defendant had completed medical school. In fact, the Agreement, entitled the "Physician Recruit-ment Agreement", recognized him as a physician, referred to him throughout as such, and is signed "Stephen W. Gordon, M.D." These facts alone cast significant doubt on the alleged "educational" nature of the loans.[8]

The Plaintiff contends that the "purpose of the loan was for the [D]efendant's support and *education* during a two year residency program in which he was training to be a family physician." *Plaintiff's Memorandum of Law on Defendant's Motion to Dismiss* at 2–3 (emphasis supplied). The Defendant argues that § 523(a)(8) is concerned only with loans awarded to students during their formal education; that here the loan was made to the Defendant for the *business purpose* of inducing the Defendant to work for the Plaintiff. *Tr.* at 14–16 (emphasis supplied).

The first two pages of the Agreement contain "Recitals" that enumerate and illuminate the Plaintiff's purpose for entering into the Agreement with the Defendant. At the time the Agreement was executed, the Plaintiff was seeking to further its "purpose of providing a full range of general and special medicine services" in Oconto Falls and surrounding communities. *Agreement* at 1. It determined that in order to further that "purpose," it had to "ensur[e] that adequate physician services [were] available." *Id.* However, the area was experiencing a "severe shortage of physicians specializing in family practice medicine" and the Plaintiff had determined that it was "essential to their maintaining a practice serving the Oconto Falls area that a family practice physician ... be recruited to practice in the area in the next few years." *Id.* The Plaintiff therefore set about recruiting the Defendant noting that his "services ... would benefit the [Plaintiff] and community served by the [Plaintiff] by enabling the [Plaintiff] to better provide quality health care...." *Id.* at 2. The Defendant was required to complete a

---

8. The fact that the Defendant had already completed medical school does not, by itself, disqualify the subject debt from consideration under § 523(a)(8). At least one court has stated that § 523(a)(8) is not "limited to obligations pertaining to education received at institutions of higher or post-secondary education." *Plumbers Joint Apprenticeship and Journeyman Training Committee v. Rosen (In re Rosen)*, 179 B.R. 935, 938 (Bankr.D.Or.1995) (finding an educational obligation existed where loan was made to debtor enrolled in an apprenticeship training program). However, in light of Congress' intent and the type of debt sought to be protected by the provision, the loan must have been made in the context of an educational program from which the debtor derived some educational benefit. *Id.* And in this case, the Plaintiff, as determined hereafter, was simply seeking to employ the Defendant.

residency program with a family medicine specialty. *Id.* The Plaintiff also "determined that the amount of financial assistance to be provided to the [Defendant] ... [was] reasonable given the benefit that the area communities will experience as a result of the [Defendant's] practice in the Oconto Falls area." Repayment of the funds would be forgiven if the Defendant established a family law practice in the area for two years, but was otherwise payable. The Plaintiff also agreed to guarantee the Defendant's salary for the duration of the practice.

Every facet of the relationship between the parties was contractual and each act that either party was obligated to perform, including the advancement of the funds, was directed at one objective: to address the perceived "severe shortage" of family practice physicians in Oconto Falls.[9] The offer of financial assistance was a calculated necessity in achieving that purpose. The funds were not loaned or used as a means to obtain an education but served as a vehicle for securing the services of a physician. The loans were "inextricably tied to the [Defendant's] employment with the Plaintiff." *A.L. Lee Memorial Hospital v. McFadyen (In re McFadyen)*, 192 B.R. 328, 332 (Bankr.N.D.N.Y. 1995). It was this type of business purpose that Congress recognized was distinctive from the kind of loans § 523(a)(8) was in-

tended to protect. Even when viewed in the light most favorable to the Plaintiff, the loans cannot be characterized as "educational" obligations under § 523(a)(8). Accordingly, the First Count of the Complaint must be dismissed.

**B. Dismissal of the Second Count under Rule 9(b) F.R.Civ.P.**

While lacking specific reference to a subsection of Section 523, it is clear that the Second Count of the Complaint seeks to have the debt deemed nondischargeable pursuant to § 523(a)(2)(A)[10]. It is equally clear that the Defendant was not misled by this lack of specificity. *See* footnote 3, *supra.* The Defendant, however, vigorously attacks this count arguing that it is not pled with sufficient specificity in violation of Rule 9(b) F.R.Civ.P., made applicable by Rule 7009(b) F.R.Bankr.P., which provides:

> *Fraud, Mistake, Condition of the Mind.* In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of a person may be averred generally.

Rule 9(b) F.R.Civ.P. (West 1997).

Rule 9(b) serves three intended goals: (1) to provide a defendant with fair notice of a plaintiff's claim, (2) to preserve a defendant's reputation, and (3) to decrease

---

9. It is primarily for that reason that the court disagrees with the Plaintiff that the facts of this case are similar to those of *U.S. Department of Health and Human Services v. Smith*, 807 F.2d 122 (8th Cir.1986) where that court held the debt to be an educational loan. There, the debtor conceded that the funds were for an educational purpose but disputed that they constituted a loan under the federal Physician Shortage Area Scholarship Program. In exchange for the funds, the debtor in *Smith* received an education and made a commitment to serve as a physician in a shortage area. Here, the nature of the obligation is not educational but business oriented, that is, intended to remedy a business need. Also, in *Smith, the loan* was made to the debtor while he was still in medical school. Finally, the Plaintiff cannot attempt to bend the facts here to fit those of *Smith* by eluding to the existence of a program without any documented support. The evidence does not support the existence of a program but establishes that the Defendant pursued a specialty in family practice pursuant to a contract which recognized a shortage of family practitioners.

10. Section 523(a)(2)(A) excepts from discharge "any debt for money, property, services ... to the extent obtained by false pretenses, a false representation, or actual fraud." To prevail under § 523(a)(2)(A), a creditor must establish following elements by a preponderance of the evidence:
 1. the debtor made ... representations;
 2. that he knew were false when made;
 3. that he made representations with the intention and purpose of deceiving the creditor;
 4. that the creditor relied on such representations; and
 5. that the creditor sustained damages as the proximate result of the misrepresentations having been made.

 *American Express Travel Related Services Co., Inc. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir.1997), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1824, 137 L.Ed.2d 1031 (1997) (citations omitted).

strike suits. *Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*, 117 F.3d 655, 663 (2d Cir.1997) (citations and internal quotation marks omitted). The Rule permits a plaintiff to generally plead the requisite intent of a fraud claim, but requires the circumstances of the alleged fraud be pled with particularity and assert "facts that give rise to a strong inference of fraudulent intent." *Id.* (citations and internal quotations omitted). The rule of particularity, however, "does not require that the complaint explain the plaintiff's theory of the case...." *Buckmasters, Ltd. v. Action Archery, Inc.*, 915 F.Supp. 1188, 1194 (M.D.Ala.1996).

 With regard to allegations of fraud, "bankruptcy courts do not necessarily require the rigid standards demanded in a non-bankruptcy civil proceeding." *Flexi–Van Leasing, Inc. v. Perez (In re Perez)*, 155 B.R. 844, 849 (Bankr.E.D.N.Y.1993). Further,

a complaint objecting to discharge must state with particularity the underlying facts and the wrong alleged so that the broad policy of the federal rules to fairly apprise parties of the complaint against them in sufficient detail to allow them to adequately answer and prepare their defense is ensured.

*Mission Viejo National Bank v. Englander (In re Englander)*, 92 B.R. 425, 427 (9th Cir. BAP 1988) (citations and internal quotation marks omitted). *See also Shearson Lehman Hutton, Inc. v. Schulman (In re Schulman)*, 196 B.R. 688, 692 (Bankr.S.D.N.Y.1996) ("The court need only ascertain whether the facts asserted in the pleadings are sufficiently particularized to raise an inference of fraudulent intent sufficient to support a finding that the debt was procured by fraud").

 The Complaint alleges that the parties entered into a contract by which the Plaintiff loaned the Defendant "large sums of money [due and owing in the amount of $76,476.62] as a subsidy for his support and education during a two year resdency(sic) period...." *Complaint* at ¶ 3. In "order to induce the [P]laintiff to make the loans ... the debtor agreed in writing to commence, and continue for at least two full years, a full-time medical practice ... in Oconto Falls, Wisconsin." *Id.* at ¶ 4. The Complaint fur-

ther alleges that the Defendant secured the loans by "false pretenses or, actual fraud, in that at the time he agreed ... he had no intention of moving to Oconto Falls, Wisconsin and practicing there for the requisite two year period." *Id.* at ¶ 5.

This language provides the Defendant with sufficient notice to respond to the Complaint and identifies the fraudulent conduct, the Defendant's role in it, and the time the fraud occurred. *See Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 217 (3d Cir.1997). As noted *supra*, the Plaintiff is not required to prove the elements of fraud in the Complaint but only to provide a factual background from which a fraudulent intent may be inferred. Therefore, reading the Complaint generously, and accepting the factual allegations of the Complaint as true, the Court is satisfied that the Plaintiff has pled fraud with sufficient particularity in Count Two.

For these reasons, the Amended Motion is **GRANTED** as to Count One and **DENIED** as to Count Two. A separate order dismissing Count One shall be entered simultaneously herewith.

### ORDER DISMISSING COUNT ONE OF COMPLAINT

The Defendant's *Amended Motion to Dismiss*, filed April 22, 1997, having come before the Court, and the Court having received and reviewed the pleadings related thereto, and having heard and considered arguments of the parties thereon; and the Court having this day issued its Memorandum of Decision on Motion to Dismiss Complaint, in accordance with which it is hereby

**ORDERED** that Count One of the Complaint is **DISMISSED.**