In re Melissa D. MEHLMAN, Debtor.

Melissa D. Mehlman, Plaintiff,

v.

New York City Board of Education, Defendant.

Bankruptcy No. 00–20590(ASH).
Adversary No. 00–5051A(ASH).

United States Bankruptcy Court,
S.D. New York.

Oct. 16, 2001.

---

56. See Motion ¶ 34, 35.

Carlos J. Cuevas, Yonkers, NY, for plaintiff.

Michael D. Hess, Corporation Counsel of the City of New York, by Bernadette M. Brennan, New York City, for defendant.

## DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

The sole issue on this motion for summary judgment is whether the debtor's breach of a "service obligation" made pursuant to a scholarship program in which the debtor promised to work for the New York City Board of Education in exchange for payment of the debtor's tuition gives rise to a debt which is non-dischargeable under Section 523(a)(8) of the Bankruptcy Code.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) in that it is a proceeding to determine the dischargeability of a particular debt.

### Background

There are no genuine issues of material fact.[1] As mandated by federal and state law, as well as by federal court judgments (*e.g., Jose P. v. Ambach,* 669 F.2d 865 (2d Cir.1982)), the New York City Board of Education (the "Board") provides occupa-

---

1. Unless otherwise indicated, the recitation of facts herein is drawn from defendant's "Statement of Material Facts" pursuant to Local Bankruptcy Rule 7056–1, plaintiff's "Counterstatement of Material Facts," and the exhibits thereto.

tional and physical therapy services to "special education" students in the New York City education system. To redress a local dearth of occupational and physical therapists, the Board created incentives designed to encourage students to enroll in programs providing training in occupational and physical therapy (the "Incentive Program"). Each student must apply and be admitted to a Board-approved occupational or physical therapy program at an approved institution in order to receive benefits from the Incentive Program. The awards are renewable annually by the student. Each student participating in the Incentive Program must sign an "Occupational Therapy/Physical Therapy Scholarship Participant Contract" (the "Contract").

The Incentive Program's primary incentive is that the Board finances a student's education in occupational or physical therapy. In exchange the student must accept employment as directed by the Board for a number of years corresponding to the years the student received benefits from the Incentive Program.[2] For example, a student who receives three years of tuition payments under the Contract is obligated to accept employment with the Board for three years.

If the student fails to fulfill her obligations under the Contract in either of two ways—by failing to complete the require-

ments for her degree and license, or by failing to complete the work commitment—the student must repay the total amount of tuition paid by the Board on behalf of the student, plus interest, within one year of either (1) the final semester of enrollment in the Incentive Program or (2) the final year of college or university enrollment, whichever is later.

The debtor, Melissa D. Mehlman ("Mehlman"), was accepted to the Board-approved master's program in occupational therapy at New York University ("NYU") and applied to the Incentive Program in March 1996. In July 1996, Mehlman received an "Award Letter" from the Board offering her admission into the Incentive Program. The Award Letter stated that Mehlman was "selected as a scholarship recipient," that the "Semester and Year of Award" was "Fall 1996" and the "Award Amount" was "Fall Tuition Only—No Fees." The letter further stated that: "The scholarship being offered to you carries a service obligation of one school-year with the New York City Board of Education for every year of scholarship assistance being provided." Mehlman executed three copies of the Contract which accompanied the Award Letter and returned them to the Board. Pursuant to the Contract, the Board paid Mehlman's tuition for the Fall 1996 semester. For each of the following three semesters, the Board issued similar

---

2. The Contract provides:

(6) *PARTICIPANT'S OBLIGATION TO PROVIDE SERVICE.* In consideration of the Board's payment of tuition on behalf of the Participant, the Participant agrees upon completion of the program to be employed by the Board as an occupational therapist or physical therapist, as applicable, for the specific period of time stated below, in a position and at a New York City location to be determined at the sole discretion of the Board.

FOR EACH SCHOOL YEAR OR PARTIAL SCHOOL YEAR OF THE PROGRAM FOR WHICH THE PARTICIPANT RECEIVES

TUITION SUPPORT PAID BY THE BOARD TO THE COLLEGE OR UNIVERSITY, THE PARTICIPANT SHALL BE OBLIGATED TO ACCEPT EMPLOYMENT WITH THE BOARD FOR ONE (1) CALENDAR YEAR. IF THE PARTICIPANT RECEIVES LESS THAN ONE (1) CALENDAR YEAR OF SCHOLARSHIP FUNDING, THE MINIMUM SERVICE REQUIREMENT SHALL NEVERTHELESS BE ONE (1) CALENDAR YEAR. EXCEPT AS OTHERWISE PROVIDED IN THIS CONTRACT, THE SERVICE SHALL BE FULL–TIME, CONTINUOUS AND UNINTERRUPTED.

Award Letters, and Mehlman signed additional Contracts with the Board for the "Spring and Summer 1997," "Fall 1997," and "Spring and Summer 1998" semesters.

In 1998, Mehlman failed two consecutive fieldwork projects. As a result of her failure to successfully complete the fieldwork portions of the program, NYU removed Mehlman from its occupational therapy program in November 1998. In July 2000, Mehlman received a letter from the Board requesting repayment in the amount of $47,062.93, the sum of the scholarship monies paid to NYU on Mehlman's behalf plus nine percent interest. On October 16, 2000, Mehlman filed a petition under Chapter 7 of the Bankruptcy Code and commenced this adversary proceeding on October 27, 2000.[3]

In Counts I and II of complaint, Mehlman seeks a declaratory judgment that the Incentive Program is not an "educational benefit program" or "student loan" within the meaning of Section 523(a)(8). Count III seeks a judgment declaring that Mehlman's debt to the Board is dischargeable because it is not protected by Section 523(a)(8). In Count IV, Mehlman argues that even if the debt to the Board is within the purview of Section 523(a)(8), she is entitled to a judgment that repayment of the debt would constitute an "undue hardship."

The Board contends that the tuition payments made to NYU on Mehlman's behalf are precisely the type of debt that Congress sought to bar from discharge in creating and amending Section 523(a)(8). Accordingly, the Board has moved for partial summary judgment dismissing counts I, II and III of Mehlman's complaint. If the Board prevails on this motion, a trial will be held on Count IV of Mehlman's complaint. If summary judgment is denied on the ground that the debt is not an educational benefit or loan under Section 523(a)(8), then the debt would be dischargeable under 11 U.S.C. § 727, obviating the need for a trial on Count IV.

### Discussion

■ In relevant part, 11 U.S.C. § 523(a) provides:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

The purpose of excepting a debt of the kind specified in Section 523(a)(8) has been well documented and has been discussed at length by many bankruptcy courts in this and other circuits. *See, e.g., Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir.2000); *Karben v. Elsi (In re Karben)*, 201 B.R. 681, 683 (Bankr. S.D.N.Y.1996); *Santa Fe Medical Services, Inc. v. Segal (In re Segal)*, 57 F.3d 342, 346 (3rd Cir.1995); *Plumbers Joint Apprenticeship & Journeyman Training Comm. v. Rosen (In re Rosen)*, 179 B.R. 935, 937 (Bankr.D.Or.1995); 4 L. King,

---

**3.** Mehlman also filed an adversary proceeding against Citibank (South Dakota), N.A. (Adversary Proceeding No. 00–5050) asserting her entitlement to a "hardship discharge." There is no dispute that the Citibank debt reflects a "student loan." The Citibank adversary proceeding is ready for trial and will be tried together with this adversary proceeding if the Board is successful on this motion for summary judgment.

COLLIER ON BANKRUPTCY ¶ 523.14[1] at 523–97 (15th Ed. rev.2000). It is sufficient to note here that:

> While the details of § 523(a)(8) have evolved over time, the problem it addresses remains the same: because student loans are generally unsecured and recent graduates often have few or no assets, these debtors have an incentive to try to discharge their educational loans in bankruptcy. If successful, they can then enjoy the higher earning power the loans have made possible without the financial burden that repayment entails. Congress enacted § 523(a)(8) because there was evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future students as well as taxpayers. Congress recognized that this is an instance where a creditor's interest in receiving full payment of the debt outweighs the debtor's interest in a fresh start.

*In re Renshaw,* 222 F.3d 82, 86–87.

The types of debt which are nondischargeable by virtue of Section 523(a)(8) fall into two general categories. The debt may be either (1) "for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution," (a "student loan") or (2) "for an obligation to repay funds received as an educational benefit, scholarship or stipend" (an "educational benefit"). In this case, the parties agree that the Incentive Program was a "program" "funded by a governmental unit." The issue is whether the tuition paid pursuant to the Incentive Program can be classified under Section 523(a)(8) as either a "student loan" or an "educational benefit."

The funds paid to NYU by the Board on Mehlman's behalf constitute a "loan" under Section 523(a)(8). Long ago, the Second Circuit defined the term "loan" as "a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows." *In re Grand Union Co.,* 219 F. 353, 356 (2d Cir.1914); *See also In re Renshaw,* 222 F.3d at 88. Pursuant to the Contract with Mehlman, the Board paid Mehlman's tuition, which Mehlman agreed to repay at a later date by accepting employment with the Board upon graduation. In paragraph (8)(A) and (B) of the Contract Mehlman agreed that if she could not or would not accept such employment, she would repay the total amount of tuition paid by the Board on her behalf, plus interest. The relationship between Mehlman and the Board, embodied in the Contract, is a paradigm of a "loan" as defined by *In re Grand Union Co.*

Other courts addressing this issue have reached the same conclusion. In *U.S. Dept. of Health & Human Services v. Avila (In re Avila),* 53 B.R. 933 (Bankr. W.D.N.Y.1985), Avila received more than $22,000 in "Scholarship Awards" from a Public Health Service Scholarship program designed to obtain health-related specialists for the National Health Corps. Avila agreed to either fulfill his service obligation with the Service or repay the funds to the United States. Applying the legislative history and definition of "loan" in *Grand Union,* the Bankruptcy Court found that the facts in Avila "track the abuse which Congress tried to eliminate by enacting [Section 523(a)(8) ]." 53 B.R. at 935. Avila "used funds provided by a governmental agency for the purpose of obtaining a higher education. These funds were to be repaid through service or direct repayment." 53 B.R. at 935–36. Thus, the agreement was an "educational loan" under Section 523(a)(8). *See also U.S. Dept. of Health & Human Services v.*

*Smith,* 807 F.2d 122 (8th Cir.1986) (medical student's acceptance of grant on the condition that he repay that amount with interest if he failed to practice in a "physician shortage area" for the requisite period was a nondischargeable "loan" under Section 523(a)(8)); *U.S. Dept. of Health & Human Services v. Brown,* 59 B.R. 40, 42 (Bankr.W.D.La.1986) (debtor who agreed in exchange for scholarship to serve in "critical health manpower shortage area" for three years following completion of medical training or else repay amounts received under the scholarship award plus interest received nondischargeable "educational loan").

Furthermore, the funds received by Mehlman constitute an "educational benefit" under Section 523(a)(8). It is not disputed that the Incentive Program provided a source of funding to Mehlman and paid her tuition in full for four semesters, enabling her to pursue a degree in occupational therapy. *See Burks v. State of Louisiana Board of Regents (In re Burks),* 244 F.3d 1245 (11th Cir.2001) (debtor who received scholarship grants to finance medical training in exchange for agreement to practice medicine in a designated physician shortage area or repay the amount of grants plus interest received an "educational benefit" within the ambit of non-dischargeable loans contemplated by Section 523(a)(8)).

Mehlman argues that the Incentive Program cannot serve as a "student loan" or "educational benefit" as to her and also fulfill the Board's requirements under state and federal law. As Mehlman's counsel reasoned at oral argument, "here the world is black and white . . . because if it's part of the employment program then it's dischargeable. If it's purely a scholarship program, it's non-dischargeable." (Tr. at 18) Thus, Mehlman argues, because her debt enabled the Board to comply with its obligations under *Jose P., supra,* the debt could not have also been incurred for educational purposes. In support of this argument, Mehlman cites *A.L. Lee Mem'l Hosp. v. McFadyen (In re McFadyen),* 192 B.R. 328 (Bankr.N.D.N.Y.1995) and *Community Mem'l Hosp. v. Gordon (In re Gordon),* 231 B.R. 459, 464 (Bankr.D.Conn. 1999).

In *McFadyen,* the debtor, in connection with her employment with the plaintiff, entered into an "RN Scholarship Agreement" by which she would be obligated to repay the tuition advanced with interest if she terminated employment before three years elapsed. 192 B.R. at 330. The Court there held that the loan was made "for the purpose of securing Debtor's services as a nurse" and that the funds advanced on behalf of the debtor were "inextricably tied to the Debtor's employment with the Plaintiff as a registered nurse." *Id.* at 332. The loan was an "all or none" proposition in that, if the debtor had terminated her employment with the plaintiff after 35 months of employment, she would nevertheless be required to repay $7,465 plus interest. *Id.* at 332–33. The Court determined that the program "was intended not as an educational benefit to the Debtor, but rather it was intended to benefit the Plaintiff by assuring that it had a qualified nursing staff on a relatively long-term basis." *Id.* at 332–333.

A recent Eleventh Circuit case rejected the contention that only a loan made purely for educational purposes is non-dischargeable under Section 523(a)(8). *Burks v. State of Louisiana Board of Regents (In re Burks),* 244 F.3d 1245 (11th Cir.2001). Burks, relying on *McFadyen,* argued that the annual stipends he received from the Louisiana Board of Regents were not for an "educational benefit" because they were given not only for the purpose of allowing Burks to pursue his education, but also for

the purpose of achieving diversity among instructors in Louisiana's universities. 244 F.3d at 1246. The Eleventh Circuit rejected Burks' argument, noting that "numerous courts have held that loans such as this one—where funds are loaned to students to assist them with their education in exchange for an agreement to fulfill a service obligation or, in the alternative, to repay the amount received plus interest— are nondischargeable." *Id.* (citing cases). The Court noted its disagreement with the *McFadyen* view that programs offering educational benefits in exchange for service obligations are *per se* not educational in purpose. *Id.* at 1247, fn. 2.

In *Gordon,* the debtor, after graduating from medical school, agreed to immediately commence a two-year residency program and thereafter establish a full-time family practice in Oconto Falls, Wisconsin, which he would be required to maintain for at least two years. 231 B.R. at 462. In exchange, the plaintiff hospital agreed to guarantee the debtor's income during his practice and pay "Residency Program Loan Subsidies" to the debtor. *Id.* The plaintiff advanced $70,000 during the debtor's residency, but the debtor failed to establish a family medical practice. The bankruptcy court found that the loan was not educational in nature. *Id.* at 464. The plaintiff recited in its agreement with the debtor that the Oconto Falls area was experiencing a "severe shortage of physicians specializing in family practice medicine," that it was "essential to their maintaining a practice serving the Oconto Falls area that a family practice physician ... be recruited," and that it would benefit the plaintiff and community by enabling the plaintiff to better provide quality health care. *Id.* at 465. The court concluded: "Every facet of the relationship between the parties was contractual and each act that either party was obligated to perform, including the advancement of the funds, was directed at one objective: to address the perceived 'severe shortage' of family practice physicians in Oconto Falls. The offer of financial assistance was a calculated necessity in achieving that purpose." *Id.* at 465. Thus, the loans could not be characterized as "educational." *Id.*

However, the Court in *Gordon* distinguished the Eighth Circuit's decision in *U.S. Dept. of Health and Human Services v. Smith, supra,* because the debtor in *Smith* "received an education" in exchange for the funds because the loan was made to the debtor while he was still in school. *In re Gordon,* 231 B.R. 459, 465, fn. 9. Because Mehlman's Contract with the Board was made while she was attending school and the funds advanced permitted her to pursue an education, application of *Smith,* rather than *Gordon,* is apposite.[4]

■ To summarize, Mehlman's argument that Section 523(a)(8) does not apply when there is some societal or legal objective served by the program independent of the funding of education simply does not find support in the statute. The statute exempts from discharge "an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution," and "an obligation to repay funds received as an educational benefit, scholarship or stipend." Thus a finding that a debt constitutes a "student

---

4. I find no reason under Section 523(a)(8) to distinguish the Incentive Program here, enacted to comply with federal court judgments requiring occupational and physical therapy services for special education students, from the programs in *In re Smith* and *In re Brown, supra,* designed to ameliorate physician or manpower shortages, or *In re Burks, supra,* which was intended to achieve diversity among university instructors.

loan" or "educational benefit" as defined under the statute is sufficient to invoke Section 523(a)(8). Nothing in the statute limits its application where some third party also receives a benefit, or where some additional objective is fulfilled.[5]

### Conclusion

The debt arising from plaintiff's breach of the service obligation required by her Contract with the defendant is a "student loan" which provided an "educational benefit" to the plaintiff under 11 U.S.C. § 523(a)(8). Accordingly, defendant's motion for partial summary judgment is granted.

Defendant's counsel is hereby directed to settle an order dismissing Counts I, II and III. Chambers will contact the parties for a telephone conference to discuss further proceedings, including the scheduling of a trial on Count IV of the complaint.

---

5. To the extent that the cases relied upon by Mehlman reach a contrary conclusion, this Court respectfully disagrees.